# *Valli Kane & Vagnini*

## EMPLOYEE RIGHTS ATTORNEYS

600 Old Country Road
Suite 519
Garden City, NY 11530

Tel: (516) 203-7180
Fax: (516) 706-0248
www.vkvlawyers.com

August 2, 2023

Matthew L. Berman, Esq.
mberman@vkvlawyers.com

**BY ECF**

Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:**   ***Charles, et al. v. City of New York, et al.,* Docket No. 23-cv-03108**

Your Honor:

We write on behalf of Plaintiffs in response to the letter submitted by the non-municipal defendants in this action ("NMDs") on July 21, 2023 requesting a pre-motion conference in anticipation of their filing a motion to dismiss pursuant to Fed. R. Civ. P. 12 ("Letter," Dkt No. 49 and its attachment, Dkt No. 50). We incorporate by reference our response to the City's similar request (Dkt 48), filed contemporaneously herewith.

NMD's Letter starts out by stating that the Complaint (ECF Dkt No. 1), which challenges the City's Open Closed Streets program under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), state and municipal law should be dismissed on the putative basis that the Complaint requires a "fundamental alteration of the [Closed] Streets program by allowing motor vehicles to drive into areas filled with pedestrians, cyclists, wheelchair users, and others recreating on the street." And yet this "fundamental alternation" of the public streets, as NMDs characterize it, was not conducted with any impact analysis or any thought whatsoever into the Program's impact upon the disabled, or into any discussion with the disabled or their advocates over accommodating those needs, even though defendants had actual notice of the problems as early as April, 2021. *See* Complaint, at ¶¶ 47-48.

Incredulously, NMDs feign shock that Plaintiffs would seek to have public streets used by the public's motor vehicles. And they infer that wheelchair users are in favor of this program (Who? They don't say.). Hardly. Everyone outside a vocal minority despises the City's unlawful programs. In fact, just yesterday, State Supreme Court Judge Arlene Bluth struck down another of the City's Orwellian named authoritarian programs – the "Open Restaurants" Program – which *closes* public sidewalks in favor of private establishments. *See* https://www.cueupny.com/press-releases

Honorable Eric R. Komitee
August 2, 2023
Page 2

Certainly, the political process can change the use of public spaces but, as set forth in the Complaint, even then the law requires that Defendants provide equal access and reasonable accommodations in administering public programs and services.  Complaint at ¶¶ 8, 17, 154.

NMD's statement that the Program effects a "fundamental alteration" is an **admission** that Defendants' conduct is prohibited by the Americans with Disabilities Act and Rehabilitation Act. As stated in the Complaint (¶ 46), both "alterations" and "renovations" trigger the regulatory requirements of Title II of the ADA, codified in 28 CFR part 35.151, which Defendants do not even purport to have adhered to.

To the extent that NMDs intend to argue that the alterations of the Program are so fundamental that reasonable modifications to accommodate the needs of the disabled are not required, the burden is on them to prove that as an affirmative defense.  28 CFR § 35.130(b)(7). Plaintiffs need not plead around such defenses.  *See Ibarzabal v. Morgan Stanley DW, Inc.*, 333 F. App'x 605, 606–07 (2d Cir. 2009) (summary order) (collecting cases).

NMDs assert three additional putative grounds in support of their anticipated motion. *First*, they allege that many of the NMDs were not validly served, since the returns of service reflect service on incorrect individuals, the wrong organizations, or people who are not proper persons to receive such service on behalf of an unincorporated association.  Not so.  While initial attempts to serve some defendants may have failed, each NMD has now been properly and timely served, and this is evidenced by the affidavits of service e-filed in the Court's docket, as set forth below:

Dkt No. 27 – Clara Smith;
Dkt No. 29 – Jeffrey Hodson;
Dkt No. 30 – Loisaida Open Street Community Coalition;
Dkt No. 31 – The Horticulture Society of NY
Dkt No. 37 – Noel Hildalgo
Dkt No. 39 – Nuala O'Doherty-Naranjo
Dkt No. 40 – Kevin LaCherra
Dkt No. 41 – North Brooklyn Open Streets Community Coalition;
Dkt No. 42 – North Brooklyn Parks Alliance
Dkt No. 43 – North Brooklyn Mutual Aid;
Dkt No. 44 – W103 Open Street Community Coalition;
Dkt No. 45 – Fort Greene Open Street Coalition;
Dkt No. 46 – Jim Burke; and
Dkt No. 51 – 34th Avenue Open Street Coalition.

*Second*, NMDs allege that Plaintiffs' Complaint engages in "shotgun pleading" that fails to clarify which allegations pertain to which causes of action.  Not so.  For example, it states that NMDs failed to accommodate Plaintiffs (¶ 45); the First Cause of Action (Title II of the ADA) clearly distinguishes between the role of the City and the NMDs ("the remaining Defendants have been delegated the power to administer those services and actually do administer those services) (¶ 142);  the Third Cause of Action (§1983) refers to NMDs' administration of the Program (¶

Honorable Eric R. Komitee
August 2, 2023
Page 3

150); the Fourth Cause of Action (NYSHRL) alleges that NMDs acted as the agents of the City (¶152); and the Fifth Cause of Action (NYCHRL) also identifies NMDs as the City's agents (¶ 154).

Rule 8(a) of the Federal Rules of Civil Procedure does not require Plaintiffs to tie specific factual allegations to specific legal theories, and only requires "a short and plain statement" of the grounds for jurisdiction and the claim showing that the pleader is entitled to relief; and requires a demand for relief sought. Fed.R.Civ.P. 8(a)(1-(3). Here, the essence of the claims is obvious: Defendants have collectively denied Plaintiffs equal access to public services and failed to reasonably accommodate Plaintiffs' disabilities, in violation of federal, state, and municipal law. NMDs, in particular, have acted with the delegated power of the City's Department of Transportation ("DOT"), making them State Actors, funding their activities with federal funds (Complaint at ¶¶ 36, 150) provided to the City from the Federal Government, and have exercised day-to-day control over the barriers and obstructions that they themselves (as distinct from the City) placed into the Streets. They failed to remove these obstacles, depriving Plaintiffs of equal access to public services and programs, and refused to reasonably accommodate Plaintiffs' disabilities. *See also* Complaint at ¶ 12 ("unlawful delegation of City's police power" to NMDs); ¶ 14 (City is permitting NMDs to block or restrict access); ¶ 25 (NMDs are provided with police power by the City to enforce the Program); ¶ 29 (the Program is managed by the DOT, which delegates its police power to NMDs); ¶ 41 (NMDs arbitrarily shut down the designated street zones outside of DOT-authorized days and times"); ¶ 47 (Defendants were on actual notice that they were violating the rights of the disabled); ¶ 64 (Defendants have actual knowledge that the Program violates the rights of disabled community residents); ¶ 80 (defendant Horticultural Society's volunteers do not adhere to DOT policies requiring them to retrieve barricades); ¶¶ 81 – 94 (describes the NMDs activities to administer and enforce the program, concluding that they "exercise the police power delegated to [NMDs] by DOT").

NMDs's argument doesn't even support a motion for a more definite statement under Rule 12(e), let alone a motion to dismiss the pleading under Rule 12(b). The Complaint's allegations, if proven, establish liability under 42 USC § 12132 (prohibiting disabled from being excluded from participation in public services or programs) and the Title II regulations, including 28 C.F.R. § 35.130 (placing an affirmative duty on public entities to make reasonable accommodations).

*Third*, in contrast to NMD's assertion, NMD's are not State or City Officials named in their "individual capacity" – they are private volunteers acting as agents of the City, and they can thus be the subject of injunctive and/or declaratory relief Ordered by the Court, as sought in the Complaint's Prayer for Relief (see Complaint, at page 46 of 47).

For all of these reasons, there is no legitimate basis to dismiss the Complaint against the City, and the City's request for leave to file a motion under Fed. R. Civ. P. 12 should be denied in its entirety.

Honorable Eric R. Komitee
August 2, 2023
Page 4

Respectfully submitted,


**VALLI KANE & VAGNINI LLP**


/s *Matthew L. Berman*
Matthew L. Berman, Esq.
mberman@vkvlawyers.com


cc:     All counsel of record, via ECF.