Index No.  23-CV-03108-EK-CLP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JESS CHARLES, KRYSTYNA CHUDA, ROSLYN HUEBENER, MILL JONAKAIT, CARMEN KOLODICH, RICHARD KOLODICH, MARY MCGUCKIN, DEBORAH PERRIN, JOHN DAVID TINEO, KRYSTYNA ZABLOCKI, and TADEUSZE ZABLOCKI,

Plaintiffs,

vs.

THE CITY OF NEW YORK, NORTH BROOKLYN PARKS ALLIANCE, NORTH BROOKLYN OPEN STREETS COMMUNITY COALITION, NORTH BROOKLYN MUTUAL AID, 34TH AVENUE OPEN STREETS COALITION, NOEL HIDALGO, KEVIN LACHERRA, JEFFREY HODSON, NUALA O'DOHERTY-NARANJO, AND JIM BURKE,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANT'S MOTION TO DISMISS**

*SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for City Defendant*
*100 Church Street*
*New York, NY  10007*

*Of Counsel:  Adam M. Moss and*
*Sherrill Kurland*
*Tel:  (212) 356-4017*
*amoss@law.nyc.gov*
*skurland@law.nyc.gov*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ...........................................................................1

SUMMARY OF PLAINTIFFS' CLAIMS AND CITY ARGUMENTS .......................................3

ARGUMENT .....................................................................................................5

POINT I ...................................................................................................5

PLAINTIFFS FAIL TO STATE A CLAIM THAT TEMPORARY LIMITATION OF VEHICULAR ACCESS TO CERTAIN STREETS EXCLUDES INDIVIDUALS WITH DISABILITIES FROM PARTICIPATION IN THE BENEFITS OF A SERVICE, PROGRAM, OR ACTIVITY OF A PUBLIC ENTITY ...................................................................................5

A.    While Not Required by the ADA, DOT Rules Will Provide an Accommodation to Plaintiffs, thus Plaintiffs Fail to State a Claim for Reasonable Accommodation ...........................................6

B.    The Ability to Drive on a Specific Street is Not Covered by the ADA ...........................................7

1.    Specific Street Are Not "Services, Programs, or Activities" ...........................................8

2.    The City Clearly Provides Meaningful Vehicular Access on City Streets ...........................................10

POINT II ...................................................................................................13

PLAINTIFFS FAIL TO STATE A CLAIM THAT THE CITY IS REQUIRED TO MAKE AN ACCOMMODATION BASED ON AN ALLEGED MODIFICATION OF A FACILITY ...........................................13

A.    Title II Municipal Obligations Regarding Facilities ...........................................14

B.    The City Does Not Alter a Facility When It Limits Access to or Closes a Street ...........................................15

POINT III ........................................................................................................19

    PLAINTIFFS' CLAIMS BASED ON ALLEGED
    LIMITATIONS OF AMBULANCE, RIDE SHARE
    AND ACCESS-A-RIDE ACCESS FAIL TO
    STATE A CLAIM UNDER THE ADA .....................................................19

POINT IV ........................................................................................................22

    PLAINTIFFS' CLAIMS REGARDING
    BLOCKED ACCESS TO CURBS ALSO FAIL TO
    STATE A CLAIM AND PLAINTIFFS LACK
    STANDING TO ASSERT SUCH CLAIM .................................................22

POINT V ..........................................................................................................24

    CERTAIN PLAINTIFFS FAIL TO STATE A
    CLAIM DUE TO MOOTNESS .................................................................24

POINT VI ........................................................................................................25

    THE COURT SHOULD NOT EXERCISE
    SUPPLEMENTAL JURISDICTION OVER
    PLAINTIFFS' HYSHRL AND NYCHRL CLAIMS ...............................25

CONCLUSION .................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Pages**

Alvarez v. Smith,
    558 U.S. 87 (2009)...................................................................................24

Am. Council of the Blind of N.Y. Inc. v. City of N.Y.,
    495 F. Supp. 3d 211 (S.D.N.Y. 2020)..................................................12

Bronx Indep. Living Servs. v. Metro. Transp. Auth.,
    2021 WL 1177740 (S.D.N.Y. 2021)....................................................16

Bvba v. Apm Music Servs. LLC,
    2022 WL 17539113 (S.D.N.Y. 2022)..................................................25

Campbell-Ewald Co. v. Gomez,
    577 U.S. 153 (2016).................................................................................24

Cain v. Rambert,
    2014 WL 2440596 (E.D.N.Y. 2014)...................................................25

Doe v. Pfrommer,
    148 F.3d 73 (2d Cir. 1998)..............................................................20-21

Friends of the Earth, Inc., v. Laidlaw Envtl. Servs.,
    528 U.S. 167 (2000).................................................................................24

Giordano v. City of New York,
    274 F.3d 740 (2d Cir. 2001).................................................................25

Guglielmo v. Neb. Furniture Mart, Inc.,
    2020 WL 7480619 (S.D.N.Y. 2020)...............................................23-24

Henrietta D. v. Bloomberg,
    331 F.3d 261 (2d Cir. 2003)..................................................................21

Kinney v. Yerusalim,
    9 F.3d 1067 (3d Cir. 1993)..........................................................9, 16-18

Liberty Res., Inc. v. City of Phila.,
    2020 WL 3642484 (E.D. Pa. 2020) .......................................................9

Molloy v. Metro. Transp. Auth.,
    94 F.3d 808 (2d Cir. 1996)..............................................................17-18

N.J. Prot. & Advocacy, Inc. v. Twp. of Riverside
    2006 WL 2226332 (D.N.J. 2006) ........................................................................8, 14

Nielsen v. Rabin,
    746 F.3d 58 (2d Cir. 2014)...................................................................................22

Parker v. Universidad de P.R.,
    225 F.3d 1, 5 (1st Cir 2000)................................................................................18

Pascuiti v. New York Yankees,
    87 F. Supp. 2d 221 (S.D.N.Y. 1999)............................................................. 10-11

Presmarita v. Metro-North Commuter R.R. Co.,
    2017 WL 6542515 (S.D.N.Y. 2017)......................................................................6

Rodriguez by Rodriguez v. City of N.Y.,
    197 F.3d 611 (2d Cir. 1999).................................................................................20

Renne v. Geary,
    501 U.S. 312 (1991).............................................................................................24

Scharff v. County of Nassau,
    2014 WL 2454639 (E.D.N.Y. 2014)...........................................................9, 15, 18

Sinisgallo v. Town of Islip Hous. Auth.,
    865 F. Supp. 2d 307 (E.D.N.Y. 2012) ...................................................................7

Sussle v. Sirina Prot. Sys. Corp.,
    269 F. Supp. 2d 285 (S.D.N.Y. 2003)..................................................................25

Town & Country Adult Living, Inc. v. Vill./Town of Mt. Kisco,
    2019 WL 1368560 (S.D.N.Y. 2019)......................................................................7

United Spinal Ass'n v. Bd. of Elections,
    882 F. Supp. 2d 615 (S.D.N.Y. 2012)..................................................................11

Veldhuis v. GEICO Gen. Ins. Co.,
    2023 WL 319576 (D. Conn. 2023) .........................................................................6

**Statutes**

City Administrative Code § 19-107 .............................................................................1, 7

City Administrative Code § 19-107.1 ............................................................................1

Fed. R. of Civ. Proc. 12(b)(1)&(6) ...............................................................................1

28 C.F.R. § 35.104 ...................................................................................................11

28 C.F.R. § 35.150 ............................................................................................9, 11-12

28 C.F.R. § 35.151 ..............................................................................................13-15

36 C.F.R. Part 1191 ............................................................................................13-15

34 RCNY § 4-21 ..............................................................................................1, 6, 24

8 U.S.C. § 1367 ........................................................................................................24

42 U.S.C. § 1983 ........................................................................................................6

42 U.S.C. § 12132 ..........................................................................................11, 17, 20

42 U.S.C. § 12162 ....................................................................................................17

## PRELIMINARY STATEMENT

Defendant, the city of New York ("City") submits this Memorandum of Law in support of its motion to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

During the COVID-19 pandemic crisis, the City Department of Transportation ("DOT") created the NYC Open Streets Program ("Program" or "Open Streets") pursuant to the Administrative Code of the city of New York ("Administrative Code") § 19-107(a)(ii), which permits the temporary closure of streets. Open Streets provided an opportunity for New Yorkers to gain greater and safer access to outdoor spaces. Due to its success, the City Council voted in April 2021 to enact Local Law No. 55[1] to require DOT to operate the Program, with the goal of expanding opportunities in the City for pedestrian access, bicycling, as well as outdoor school-related activities such as recess and school pick-up. Under Open Streets, now codified in Administrative Code § 19-107.1, certain City streets are temporarily closed to some or all vehicular traffic—at certain times of the day and on certain days of the week. On February 28, 2024, DOT adopted rules to implement Open Streets, which will take effect on March 29, 2024.[2]

Open Streets provides a public benefit to all New Yorkers, including individuals with disabilities, who have gained additional opportunities to access City streets, in a safe, pedestrian-friendly environment, where vehicles may only gain limited access.[3] Under Open

---

[1]    https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=4424528&GUID=796B94D6-9FD4-4448-8E8A-9A631444F421&Options=ID|Text|&Search=open+streets

[2] The DOT rules, to be codified at Title 34 RCNY 4-21, titled "Open Streets," are annexed to the Declaration of Adam M. Moss, submitted herewith and are available at: https://rules.cityofnewyork.us/rule/open-streets-program/

[3] Open Streets that are considered "Limited Local Access Open Streets," are temporarily closed to vehicular traffic by moveable barriers to discourage the use of vehicles except for local vehicle access for limited uses, such as picking up/dropping off, local deliveries, emergency access, Access-A-Ride pickup/drop off, utility vehicles, and City services vehicles. These are the locations complained of in the Amended Complaint. Open Streets also includes "Full Closure and "Full Closure: Schools" locations, where no vehicle access or parking is permitted (other than emergency vehicle access). None of the Plaintiffs appear to challenge or allege any injuries regarding the "Full Closure" or "Full Closure: Schools" Open Streets locations.

Streets, community events and activities, economic development, cycling and pedestrian access, safe school pick up and outdoor school activities are all supported.

The Plaintiffs here—while rhetorically expressing a broad critique of Open Streets—are individuals that are mainly alleging inconveniences and/or concerns, at three specific Open Streets locations, where they live: (i) Berry Street in Brooklyn; (ii) 34th Avenue in Queens; and (iii) Avenue B in Manhattan.[4]  In most instances, the concerns enumerated by Plaintiffs are expressly addressed by the new DOT rules.

In any event, the injuries alleged by Plaintiffs do not implicate a cognizable claim under the Americans with Disabilities Act ("ADA") and Rehabilitation Act, and therefore should be dismissed.  Plaintiffs ask this Court to take the unprecedented step of extending the protections of the ADA beyond any established interpretation of the ADA statutory language, implementing rules, regulations, or case law precedent.  While the Amended Complaint does not make explicit what relief Plaintiffs seek,[5] what is clear is that Plaintiffs seek a ruling from this Court that would essentially open the door to an ADA challenge whenever the City closes a street permanently or temporarily, to vehicular traffic.  The City manages its streets and is authorized under the law to close streets, either on a permanent or temporary basis, for a variety of reasons.  When it does so, it is under no obligation to provide vehicular access or parking directly in front of a particular individual's home.

---

[4] Two Plaintiffs also complain about the South Portland Ave., Brooklyn location, but this location was removed from Open Streets on September 26, 2023, with no plans to be re-introduced.

## SUMMARY OF PLAINTIFFS' CLAIMS AND CITY ARGUMENTS

Plaintiffs' causes of action (Compl. ¶¶ 145-159) all relate to their general claim that they are being denied "of the opportunity to participate in and benefit from the City's services, programs or activities related to the provision of streets and sidewalks as a result of [Open Streets] and its administration by Defendants" and that they have "been denied access to city streets, sidewalks, and curb cuts, solely by reason of their disabilities."  However, most of the allegations supporting this contention are in actuality, criticisms of the Program as a whole, which have nothing to do with the ADA.  At its core, the Amended Complaint seeks to turn the ADA from a shield that prevents discrimination, into a sword to undo a program, duly enacted by the City Council, which Plaintiffs barely seek to hide their animosity toward.[6]  As outlined here, all of the claims should be dismissed.

Point I addresses Plaintiffs' claim that the City is excluding participation of individuals from a City "service, program, or activity" under the ADA by limiting vehicular access on certain Open Streets.  To the extent the City's provision of vehicle access on its streets to the public is a "service" the City provides, the City's obligation under the ADA is to ensure that, *when viewed in its entirety*, the service is readily accessible to and usable by individuals with disabilities.  In 2023, Open Streets only restricted or limited vehicular access on approximately 0.4% of City roads, and accordingly, Plaintiffs cannot state a claim that the service provided by the City is not broadly accessible to individuals with disabilities.

---

[5] Their causes of action all reference a "failure to accommodate." Am. Compl. ¶¶ 145-159, and yet, the "Prayer For Relief" section seeks an order "enjoining the Open Streets Program."

[6] Amongst the Amended Complaint's rhetoric: "Yet [DOT], and the non-municipal defendants named in this lawsuit have rammed the program through to appease a population of affluent cyclists. The cyclists are affiliated with the billionaire-funded 'Transportation Alternatives,' a lobbyist group of climate change activists who 'demand that cars be barred' from Manhattan altogether and whose members viciously harass anyone who interferes with their self-proclaimed right to exclusive dominion over the City's public streets and sidewalks. Am. Compl. ¶ 5.

Point II addresses Plaintiffs' claim that the placement of temporary barriers on City streets to limit traffic is an "alteration" under the ADA. While facilities, such as streets, must be ADA compliant when they are altered or constructed, the temporary partial closure of streets to limit vehicular access is not such an alteration.

Point III addresses various allegations asserted by Plaintiffs to support their claim that Open Streets results in discrimination against Plaintiffs. These include, inter alia, claims that ambulance response time is slowed by the placement of temporary barriers, that temporary barriers deter pick up and drop off by ride-share services, that overall parking has been reduced by the Program, and that Plaintiffs have been harassed by adherents of the Program. But as a matter of law, these allegations are mere complaints and do not form the basis for an ADA claim. These alleged harms, even if they are true, would apply equally to individuals with disabilities as to those individuals without disabilities, and do not demonstrate a lack of even-handed treatment.

Point IV addresses Plaintiffs' arguments that they have been denied the opportunity to benefit from the provision of City "sidewalks" based on barricades blocking curb cuts. Such claims should be dismissed as none of the Plaintiffs allege an injury-in-fact, Open Streets does not authorize blockage of sidewalks, and the claims are not sufficiently pled.

Point V addresses claims by Plaintiffs residing near the South Portland Avenue Open Street, and explains that these claims should be dismissed based on mootness, as the City has discontinued the Program at such location.

Finally, Point VI addresses Plaintiffs' City and State Human Rights Law claims, and explains that the Court should decline supplemental jurisdiction over such claims.

## ARGUMENT

## POINT I

**PLAINTIFFS FAIL TO STATE A CLAIM THAT TEMPORARY LIMITATION OF VEHICULAR ACCESS TO CERTAIN STREETS EXCLUDES INDIVIDUALS WITH DISABILITIES FROM PARTICIPATION IN THE BENEFITS OF A SERVICE, PROGRAM, OR ACTIVITY OF A PUBLIC ENTITY**

Plaintiffs argue the City is denying them "of the opportunity to participate in and benefit from the City's services, programs or activities related to the provision of *streets* and sidewalks as a result of [Open Streets] and its administration by Defendants." Am. Compl. ¶ 148. (emphasis added). To this end, Plaintiffs argue that streets are closed "to individuals with disabilities whose only means of accessing any of these public services is by motor vehicle." Am. Compl. ¶ 4.  More specifically, certain Plaintiffs allege that they seek to drive onto Limited Local Access Open Streets near their homes, but struggle to move the temporary barriers that limit vehicular access.[7]

In other words, Plaintiffs do not appear to plead that the Program itself violates the ADA (i.e. Plaintiffs do not claim they are deprived of the opportunity to enjoy the benefits of the expansion of pedestrian Open Streets locations).  Moreover, Plaintiffs do not claim any injury from the operation of "Full Closure" and "Full Closure: Schools" Open Streets locations, nor even from most Limited Local Access Open Streets locations.  Instead, Plaintiffs chiefly argue that in operating the otherwise non-discriminatory program, the City is violating the ADA because Plaintiffs are being hindered in their ability to drive their vehicles in front of their

---

[7] Am. Compl. ¶¶ 51, 55, 61, 74, 81, 84, 85.  For example, Plaintiff Zablocki states he "needs to get in and out of his home several times a day" in his vehicle and "moving the barricades is difficult and dangerous." Am. Compl. ¶ 85.

homes.  Moreover, Plaintiffs argue, because the City is denying access to a program (i.e. the vehicular access the City provides to streets), the City must make an accommodation.  As discussed in Point I, DOT's recently promulgated rules address Plaintiffs' claimed injury, but in any event, the City is not obligated by the ADA to make an accommodation.[8]

### A. While Not Required by the ADA, DOT Rules Will Provide an Accommodation to Plaintiffs, thus Plaintiffs Fail to State a Claim for Reasonable Accommodation

As an initial matter, the Open Streets rules promulgated by DOT on February 28, 2024 <u>do</u> make accommodations that allow barriers to be moved in order to facilitate vehicular access to Limited Local Access Open Streets.  <u>See</u> 34 RCNY 4-21(c)(10).[9]  But because this litigation commenced before promulgation of the rules, Plaintiffs merely speculated that the implementation of the rules will not address their concerns.

In order "[t]o state a *prima facie* case for discrimination based on a failure to reasonably accommodate, a plaintiff must demonstrate that: (1) he suffers from a [disability or] handicap as defined by the [statutes]; (2) the defendant knew or reasonably should have known of the plaintiff's [disability or] handicap; (3) accommodation of the [disability or] handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4)

---

[8] Similarly, the Rehabilitation Act claim should also be dismissed, as "[t]he Second Circuit treats claims under the two statutes identically." See <u>Presmarita v. Metro-North Commuter R.R. Co.</u>, 2017 WL 6542515, *2 (S.D.N.Y. 2017).  Also, to the extent a claim is asserted pursuant to 42 U.S.C. § 1983, such claim should be dismissed if the Amended Complaint does not allege plausible grounds for relief under the ADA. <u>See e.g.</u> <u>Veldhuis v. GEICO Gen. Ins. Co.</u>, 2023 WL 319576, *3 (D. Conn. 2023).

[9] (10) Accessibility for limited local access streets.

    (i)      For limited local access open streets, any person may temporarily move the barriers to facilitate local vehicle access

    (ii)     The Department may, on certain limited local access open streets, provide services to assist individuals who (i) are eligible for Access-A-Ride services; (ii) hold a New York City parking permit for people with disabilities; or (iii) hold a New York State permanent parking permit for people with severe disabilities, or another state's equivalent, to temporarily move the barriers to facilitate local vehicle access

    (iii)    When the Department offers such services, the Department will inform the public by posting on its website and placing signage along such open street(s) that indicates the process by which a person may request assistance.

defendants refused to make such accommodation." E.g. Town & Country Adult Living, Inc. v. Vill./Town of Mt. Kisco, 2019 WL 1368560, *16 (S.D.N.Y. 2019) (quoting Sinisgallo v. Town of Islip Hous. Auth., 865 F. Supp. 2d 307, 336 (E.D.N.Y. 2012)).

   With respect to the above criteria, the Amended Complaint is deficient.  The promulgated rules contemplate that DOT may in fact provide services to assist individuals with disabilities to temporarily move the barriers to facilitate local vehicle access.  The Amended Complaint does not claim that the accommodation contemplated by the rules is insufficient, nor have Plaintiffs pled that the City has failed to make any accommodation under the rules.  In fact, Plaintiffs have simply included the mere words "failure to accommodate" in the Amended Complaint without any discussion of DOT's rules and how they may be implemented; nor have Plaintiffs enumerated the elements of a reasonable accommodation claim.  See Town & Country Adult Living, Inc., 2019 WL 1368560, *16 ("There is no discussion of the elements of a reasonable accommodation claim or any indication from Plaintiffs as to how they plausibly alleged such claims in their AC.  Plaintiffs have abandoned their reasonable accommodation claims").  The Amended Complaint should be dismissed on this basis alone.

   In any event, notwithstanding the impending implementation of DOT's rules that seek to accommodate Plaintiffs herein, a threshold question of this litigation is whether the ADA incorporates a right to vehicular access to specific street locations.

## B.  The Ability to Drive on a Specific Street Is Not Covered by the ADA

   The City has authority to close streets, either on a permanent basis, or otherwise, on a temporary basis, for street fairs, parades, road work, to facilitate school pick up, or other reasons.  See NYC Admin. Code § 19-107.  Accordingly, it is logical that from an ADA perspective, to the extent the City generally must provide for vehicular access to City streets for individuals with disabilities and those without disabilities alike, its obligation is to ensure

accessibility to the streets *in their entirety*, not to individual streets. Open Streets only operates on a small fraction of City streets, and thus, restricting vehicular access to a handful of streets cannot be deemed a denial of participation in a City service, program, or activity under the ADA.

**1. Specific Streets Are Not "Services, Programs, or Activities"**

While the City is generally responsible for the operation of its streets, it is not responsible to ensure that every single existing street must be accessible 24 hours a day and 7 days a week by vehicle. To that end, ADA rules and precedent support the proposition that individual streets themselves are "facilities," rather than "services, programs, or activities." In N.J. Protection & Advocacy, the District Court for the District of New Jersey explained:

> Plaintiff argues that Defendants are obliged to install curb ramps because sidewalks constitute a service, program, or activity under the ADA and a program or activity under Section 504 [of the Rehabilitation Act]. This argument is supported by the opinion of the Ninth Circuit, the sole Circuit to address this issue. Barden v. Sacramento, 292 F.3d 1073 (9th Cir. 2002). The Ninth Circuit's conclusion notwithstanding, both the regulations and the Third Circuit explicitly refer to walks **and roadways** as "facilities," rather than activities, programs, or services. See 28 C.F.R. § 35.104 (defining "facility" as "all or any portion of buildings, structures, . . . roads, walks, passageways, parking lots, or other real or personal property"); Kinney v. Yerusalim, 9 F.3d 1067, 1069 n.3 (3d Cir. 1993) (**noting that streets** and walkways **are "facilities"** given particular priority in the regulations).
>
> The distinction between a facility and a program, service, or activity is significant, as it dictates the public entity's obligation to ensure accessibility: while entities may not exclude "qualified individual with disabilities from participation in or benefits of services, programs, or activities," the regulations do not "[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities." § 35.150(a) and (a)(3).

N.J. Prot. & Advocacy, Inc. v. Twp. of Riverside, 2006 WL 2226332, *2 (D.N.J. 2006).

The same conclusion was reached in the 2020 case <u>Liberty Res., Inc.</u>:

> We agree with the City that the pedestrian rights of way are facilities under the ADA and the Rehabilitation Act. The plain language of the regulations…create a distinction between programs, services, and activities, and the facilities in which such programs, services, and activities take place. This distinction is significant because it determines a public entity's duties regarding accessibility. Our Court of Appeals has determined that streets and walkways are facilities under the ADA and the Rehabilitation Act…Treating pedestrian rights of way as themselves a program, service, or activity would render superfluous the exception in the regulations which provide that a public entity need not make every facility accessible and thus would contradict the clear language of the regulations. See 28 C.F.R. § 35.150(a)(1)…[10] Accordingly, the motion of the City to dismiss plaintiffs' complaint will be granted to the extent plaintiffs allege that the City's failure to maintain pedestrian rights of way itself constitutes the denial of or exclusion from a City service, program, or activity.

<u>Liberty Res., Inc. v. City of Phila.</u>, 2020 WL 3642484, *4 (E.D. Pa. 2020) (citations omitted).[11]

The 2014 EDNY case, <u>Scharff v. County of Nassau</u> further illustrates the above distinction. In <u>Scharff</u>, the County argued it was not obligated under the ADA or Rehabilitation Act to install pedestrian crossing signals ("Accessible Pedestrian Signals" or "APS"), as they neither constituted a "program, service, or activity," or a "facility." The Court rejected the County's argument given that "the accommodation sections of Title II will be meaningless, and social costs will be aggravated, if people who are blind or visually impaired are not afforded the opportunities to travel safely on and between streets." <u>Scharff v. County of Nassau</u>, 2014 WL 2454639, *11 (E.D.N.Y. 2014). As relevant to the instant litigation, the court in <u>Scharff</u>

---

[10] 28 C.F.R. 35.150 states: (a) **General.** A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. This paragraph does not— (1) Necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities.

[11] While noting a circuit split regarding whether pedestrian rights of way are "services, programs, or activities," the court held it was following the Third Circuit decision in <u>Kinney</u>. In <u>Kinney</u>, the court held: "Streets are considered existing facilities under the regulations [28 C.F.R. 35.104 (1992)], and, as such, they are subject to the more lenient provisions of § 35.150 [Existing Facilities]." <u>Kinney v. Yerusalim</u>, 9 F.3d 1067, 1071 (3d Cir. 1993).

explained: "here, the 'service, program or activity' at issue is, as discussed above, the installation and maintenance of pedestrian crossing signals at crosswalks, **and the pedestrian crossing signals, walkways and crossings constitute facilities.**" <u>Id.</u> at 10. (emphasis added).

Following these precedents, and the plain language of the regulations,[12] individual streets are not "programs, services, or activities," to which accessibility is guaranteed; they are "facilities." Therefore, as discussed in the next section, to the extent that the general operation of the City streets to vehicular traffic is a City "service, program, or activity," and the streets themselves are the facilities, Plaintiffs cannot state a claim that they are being denied the opportunity to "participate in and benefit from the City's services, programs or activities related to the provision of streets…[.]" <u>See</u> Am. Compl. ¶ 148. Instead, ADA rules and precedent make clear that a "service, program, or activity, **when viewed in its entirety**" must be accessible and usable by individuals with disabilities. When viewed in its entirety, the City's streets are undeniably accessible to vehicular travel by individuals with disabilities.

### 2. The City Clearly Provides Meaningful Vehicular Access on City Streets

To the extent maintaining roadways to provide vehicular access is a "service, program, or activity," of the City, Open Streets does not deprive individuals with disabilities of the ability to readily access the City's streets by vehicle. Accordingly, Plaintiffs' claim that the City is denying them "of the opportunity to participate in and benefit from the City's services, programs or activities related to the provision of ***streets***" should be dismissed.

In <u>Pascuiti</u>, Plaintiffs sued the City (and the New York Yankees) under the ADA as well as the City and State HRL (claims also made herein by Plaintiffs), for failing to make Yankee Stadium accessible to individuals with disabilities. In analyzing the claims against the

City, the court pointed to the anti-discrimination language in Title II of the ADA and the regulations implementing it, which explain the responsibilities of public entities thereunder. The court explained that under section 42 U.S.C. § 12132, in relevant part: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Pascuiti v. New York Yankees, 87 F. Supp. 2d 221, 222 (S.D.N.Y. 1999). The court then explained that among the regulations implementing Title II, 28 C.F.R. § 35.150(a) provides: "A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." Id. at 222-23.

Based on the regulations, the court held: "The City argues that because the regulations state that the service, program, or activity must be readily accessible 'when viewed in its entirety,' the Court must look at the accessibility of the Stadium as a whole, not at individual elements. The City is correct." Id. at 223; see also e.g. United Spinal Ass'n v. Bd. of Elections, 882 F. Supp. 2d 615, 623 (S.D.N.Y. 2012) ("Regulations promulgated by the DOJ to implement the ADA provide that '[a] public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities…It is well-established in this Circuit that although the ADA and its implementing regulations do not require 'equal access' or 'equal results' for individuals with disabilities, those individuals must be provided with 'meaningful access' to a public entities [sic] programs and activities").

---

[12] See 28 C.F.R. § 35.104 (defining "facility" as "all or any portion of buildings, structures,…**roads**, walks, passageways, parking lots, or other real or personal property"). (emphasis added).

Consistent with 28 C.F.R. § 35.150 and precedent in the Second Circuit, the City must make its streets meaningfully accessible when viewed in their entirety. Plaintiffs cannot plausibly dispute that vehicular access to the City's streets is meaningfully accessible when viewed in its entirety. In 2023, the City approved approximately 25 miles of Open Streets, out of 6,300 miles of streets managed by DOT;[13] accordingly, Open Streets occupies only 0.4% of City streets. An even smaller fraction of those streets are Limited Local Access Open Streets, and still a smaller proportion are the streets complained of in this action. Even assuming arguendo that certain Open Streets are not accessible, a cause of action simply does not lie under the ADA.

It is instructive to look at another case, <u>Am. Council of the Blind of N.Y.</u>, where the City asserted a similar argument, because the Court's rationale there demonstrates the validity of the City's position herein. There, the City argued that under <u>Pascuiti</u>, the City was not obligated to install APS signals at every pedestrian signal, because City roads, when viewed in their entirety, were readily accessible to blind and visually impaired individuals. The Court held:

> In sum, the City's observation that the ADA and Rehabilitation Act may not require the installation of APS at each of its 13,200 signalized intersections does nothing to defend the status quo. Whatever the point would be at which the number (and dispersal) of APS at such crossings would afford blind and visually impaired persons meaningful access to the pedestrian grid within the meaning of these statutes, that standard is clearly not met today, with more than 95% of such crossings containing signals accessible only to sighted persons.

<u>Am. Council of the Blind of N.Y. Inc. v. City of N.Y.</u>, 495 F.Supp. 3d 211, 237 (S.D.N.Y. 2020).

Here, to the contrary, Open Streets occupies only 0.4% of City streets (by Plaintiffs' own admission, the Program could not proliferate beyond 1.6% of public roadways).

---

[13] NYC DOT's staff manage an annual operating budget of $1.4 billion and a ten-year $33 billion capital program, along with 6,300 miles of streets and highways, over 12,000 miles of sidewalk, and approximately 800 bridges and tunnels, including the iconic East River bridges.

Continued…

Am. Compl. ¶ 1.  The Program, far from impeding the cause of individuals with disabilities, in fact, supports individuals with disabilities, by expanding opportunities in the City for pedestrian and wheelchair access, which Plaintiffs do not dispute.  A finding that restricting access to certain streets, whether for Open Streets or otherwise, would mean that the City is not providing "meaningful" vehicular access to the City's system of roadways would unduly open the City to ADA accessibility challenges.  But there is simply no guarantee to parking in the City, or that every road will remain open at all times.

## POINT II

### PLAINTIFFS FAIL TO STATE A CLAIM THAT THE CITY IS REQUIRED TO MAKE AN ACCOMODATION BASED ON AN ALLEGED MODIFICATION OF A FACILITY

In Point I, the City demonstrates that individual streets should not be viewed as "programs, services, or activities," and rather, are classified as "facilities" under the ADA. Plaintiffs have also pled that "Defendants' actions in shutting down streets throughout New York City, and installing immovable barricades, police stanchions, and other 'Traffic Calming' mechanisms constitute either 'Alteration' or 'New Construction' within the meaning of the ADA, which requires that Defendants adhere to the ADA Title II Regulations codified at 28 CFR part 35.151. However, upon information and belief, in enacting and administering the Program, Defendants did not take any material steps to ensure the Program's compliance with the ADA and, to date, they have still not done so." Am. Compl. ¶ 111.

As already discussed herein, recently promulgated DOT rules provide that DOT may take steps to assist moving the temporary, moveable barriers in order to facilitate access:

---

https://www.nyc.gov/html/dot/html/about/about.shtml#:~:text=NYC%20DOT's%20staff%20manage%20an,the%20iconic%20East%20River%20bridges.

thus, even if a reasonable accommodation were required, it will be provided by the City. However, the City is under no obligation to make such an accommodation under the ADA and accordingly, the Amended Complaint should be dismissed.  Despite the classification of streets as facilities, there is no obligation to abstain from placing temporary barriers on Open Streets— there is nothing in the ADA that requires individual streets to remain accessible for *vehicular* access, and when particular streets are closed permanently or temporarily, it does not constitute an alteration under the ADA.

### A.  Title II Municipal Obligations Regarding Facilities

Under the ADA, "[t]he distinction between a facility and a program, service or activity is significant, as it dictates the public entity's obligation to ensure accessibility: while entities may not exclude 'qualified individual[s] with disabilities from participation in or benefits of services, programs, or activities,' the regulations do not '[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities." N.J. Prot. & Advocacy, Inc, 2006 WL 2226332, *2 (D.N.J. 2006).

28 C.F.R. 35.151(b), titled "New construction and alterations" states in relevant part:

> (a)     Design and construction. (1) Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992.
> ****
> (b)     Alterations. (1) Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992.

-14-

Based on the foregoing, Plaintiffs appear to argue that placing a temporary, moveable barrier on an Open Street, which limits vehicular access, constitutes such an "alteration." But there is no basis in the ADA or its regulations for such a finding. 28 C.F.R. 35.151(b) details a variety of instances in which the alteration of a facility must be accomplished in a manner that makes such facility readily accessible to and usable by individuals with disabilities.[14] In addition to the Department of Justice ("DOJ") rules promulgated to carry out the ADA, the Architectural and Transportation Barriers Compliance Board ("Access Board") is tasked by Congress with issuing minimum guidelines under the ADA.[15] Accordingly, the City is subject to many specific rules and guidelines when altering its facilities, but neither the ADA nor its implementing regulations contemplate that temporary or partial closure of a street to vehicular traffic constitutes an alteration, nor should this Court read such an obligation into the ADA.[16]

### B. The City Does Not Alter a Facility When It Limits Access to or Closes a Street

Even after amending the Complaint, Plaintiffs have pointed to nothing in any of the above-referenced regulations that would suggest closing a street to vehicular traffic would be tantamount to "altering" a facility under the ADA. If that were the case, then any closure of a road to vehicle access could potentially result in successful challenges to such closures on ADA grounds, but Plaintiffs have not raised any authority to that effect.

---

[14] For example, 28 CFR 35.151(b)(4) relates to alterations that affect a "path of travel," (i.e. a continuous unobstructed way of pedestrian passage); other sections relate to alterations to social service center establishments, housing at places of education, and assembly areas such as stadiums and theaters (28 CFR 35.151(e-g)).

[15] The [Access] Board's guidelines do not have any binding effect on their own, but instead help shape the Attorney General's regulations, which must be 'consistent' with the Board's guidelines." Scharff v. County of Nassau, 2014 2014 WL 2454639, *12 (E.D.N.Y. 2014) (internal quotation omitted).

[16] State and local government facilities must follow the 2010 ADAAG standards, at 36 CFR part 1191, appendices B and D in addition to the New Construction and alterations requirements found in 28 C.F.R. 35.151. See https://www.access-board.gov/ada/doj.html#doj-title-2. Also, the Access Board recently published new guidelines addressing access to sidewalks and streets. https://www.access-board.gov/prowag/

The seminal case <u>Kinney v. Yerusalim</u> provides a classic illustration of when a "facility" is altered such that the altered portion must be made readily accessible to and usable by individuals with disabilities. In <u>Kinney</u>, the Third Circuit held that the City of Philadelphia had an obligation to install curb ramps at intersections when it resurfaces city streets. In reaching this holding, the court explained that general concerns about discrimination "led to a particular emphasis on the installation of curb cuts. The House Report for the [ADA] noted that 'the employment, transportation, and public accommodation sections of this Act would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets.'" <u>Kinney v. Yerusalim</u>, 9 F.3d 1067, 1071 (3d Cir. 1993). Moreover, the Court noted, that the ADA rules governing alterations have a subpart that provides "when a public entity undertakes to construct new streets or to alter existing ones, it shall take that opportunity to install curb ramps." <u>Id.</u> at 1072. Thus, in <u>Kinney</u>, the alteration of "streets" as a "facility" under the ADA rules were implicated, because making an alteration to a street, without making it accessible for pedestrian access, would frustrate the specific intent of the ADA and its rules to allow individuals who use wheelchairs to travel on and between the streets.

In another example, in <u>Bronx Indep. Living Servs. v. Metro. Transp. Auth.</u>, the MTA undertook a large renovation of a train station without adding elevators to provide wheelchair access, despite the fact that none of the ten subway stations along a four mile stretch on the 6 subway line was not wheelchair accessible. An SDNY District Judge held that "the scope of the work performed at the station triggered an obligation under the ADA to alter it to the 'maximum extent feasible' to make it 'readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs...[.]" <u>Bronx Indep. Living Servs. v. Metro. Transp. Auth.</u>, 2021 WL 1177740, *1 (S.D.N.Y. 2021). There, section 12147 of the ADA, known as the "Accessible Alterations Rule" stated that it is discriminatory for "a public

-16-

entity to fail to make such alterations (or to ensure that the alterations are made) in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations." Id. at *14.  Like Kinney, a specific rule addressed the requirements for a proposed alteration.

In one other example, in the Second Circuit case Molloy, the MTA sought to reduce staff in 32 LIRR stations; their plan also called for the installation of vending machines in 18 stations.  Plaintiffs argued that these actions constituted an alteration of the station under the ADA.  The Second Circuit held that the installation of vending machines constituted an alteration, because the ADA explicitly stated that "with respect to alterations of an existing station or part thereof in…commuter rail transportation systems that affect or could affect the usability of the station or part thereof, for the…person in control of the station to fail to make the alterations in such a manner that, to the maximum extent feasible, the altered portions of the station are readily accessible to and usable by individuals with disabilities….[.]" Molloy v. Metro. Transp. Auth., 94 F.3d 808, 820 (2d Cir. 1996) (quoting 42 U.S.C. § 12162(e)(2)(B)(i)).  Moreover, the court rejected the argument that reducing staff in the stations constituted an alteration, even though plaintiffs emphasized that "the presence of clerks gives blind and visually disabled persons a significantly greater degree of security." Id. at 812.  The court rejected this argument, because reduction of staff was not a "physical" alteration, as contemplated by the statute, but as relevant here, the Court also observed:

> Notwithstanding these important services which ticket clerks provide, and notwithstanding the remedial nature of the ADA, we think it would be a strained reading of the statute and the regulation interpreting it to hold that the term "alteration" encompasses the removal of ticket clerks. The presence of a ticket clerk at these stations is not a twenty-four hour event. Indeed, at oral argument we were informed that ticket clerks generally work

-17-

> from 7 a.m. to 1 p.m. Plaintiffs' argument suggests that every day at one o'clock, the station is altered in contravention of the statute. Ticket agents, passengers, and trains, come and go. When they leave the station, the station is different in a significant sense. But the station is not altered so as to trigger the demands of the ADA.

Id.

As in Molloy, the alleged alterations here (i.e. the placement of temporary barriers at certain locations) are not permanent, but only occur at certain times of day on certain days of the week, also lending credence to the argument that they do not constitute an alteration.

In general, what Kinney and the MTA cases have in common is that courts found that the proposed alteration would frustrate the purposes of a specific ADA rule.  Accessibility to curb cuts for pedestrian access is contemplated by the ADA and its rules; wheelchair access to train stations is contemplated directly by the ADA; and physical changes to train stations, by rule, constitute alterations.  Plaintiffs point to nothing in the text of the ADA, nor in the various implementing regulations which indicates that unfettered vehicular access to the City's roads, is protected by the ADA, nor is the City aware of any such regulations. See e.g. Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir 2000) ("[t]he language of Title II does not elaborate on the obligation of a public entity to an individual with a disability in the provision of 'services, programs, or activities.'  We must rely for specifics on the regulations promulgated under Title II").  Nevertheless, the City acknowledges that lack of a specific rule does not necessarily mean a circumstance is not covered by the ADA.  For example, in Scharff, the court held that it "is unpersuaded by Defendants' argument that pedestrian traffic signals and APS are not required by the ADA and Rehabilitation Act because they are not specifically included in the definition of 'facilities.'" Scharff, 2014 WL 2454639, at *12.  But the Scharff ruling was consistent with the ADA's express emphasis on sidewalk and street access for pedestrians and individuals in wheelchairs.  Plaintiffs here introduce an entirely new theory that temporarily limiting

-18-

accessibility to vehicle access in certain locations, at certain times of day on certain days of the week, denies accessibility to individuals with disabilities. It is respectfully submitted that this Court should not create an obligation under the ADA that is not found in the rules, and defies common sense.

**POINT III**

**PLAINTIFFS' CLAIMS BASED ON ALLEGED LIMITATIONS OF AMBULANCE, RIDE SHARE AND ACCESS-A-RIDE ACCESS FAIL TO STATE A CLAIM UNDER THE ADA**

Plaintiffs also assert various claims under the ADA based on perceived or alleged negative effects of the placement of temporary barriers at Limited Local Access Open Streets which they claim as injuries. In addition to lacking specifics, and failing to include detailed factual support, these claims must be dismissed, because, even assuming arguendo, that they are true, they fail to form the basis of a claim under the ADA.

Specifically, Plaintiffs claim: i) ambulances have been delayed in the past, and they fear, will be delayed in the future, because the ambulance driver has to move a barricade to reach a Limited Local Access Open Street;[17] ii) car service drivers sometimes will not manually move barriers to pick up individuals who live on Limited Local Access Open Streets;[18] iii) that trucks have parked in front of barricades, thus preventing individuals from accessing Limited Local Access Streets by vehicle;[19] iv) there has been a reduction of parking generally in areas near Open Streets;[20] v) that plaintiffs have been harassed by City employees (and others) when

---

[17] Am. Compl. ¶¶ 48, 53, 63, 67, 80, 86.
[18] Am. Compl. ¶ 49, 64, 71, 75.
[19] Am. Compl. ¶ 52, 62, 82.
[20] Am. Compl. ¶ 59.

-19-

coming and going into Open Streets locations;[21] and vi) that because delivery trucks park at the corner, companies leave heavy packages in the building lobby, rather than at Plaintiff's door.[22]

All of these claims that purport to undergird Plaintiffs' causes of action should be dismissed for the simple reason that they fail to state a claim under the ADA. The Second Circuit has made clear that "[t]he ADA requires only that a particular service provided to some not be denied to disabled people…Thus, New York cannot have unlawfully discriminated against appellees by denying a benefit that it provides to no one." Rodriguez by Rodriguez v. City of N.Y., 197 F.3d 611 (2d Cir. 1999) (citing Doe v. Pfrommer, 148 F.3d 73, 83 (2d Cir. 1998)). To establish a violation under Title II of the ADA, the Second Circuit explained:

> Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under § 504 of the Rehabilitation Act, "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998).

The court added, "[a]s discussed previously, the central purpose of the ADA and § 504 of the Rehabilitation Act is to assure that disabled individuals receive 'evenhanded treatment' in relation to the able-bodied." Id. at 83. With respect to the claimed injuries, Plaintiffs have neither identified a municipal service or program that they are being deprived access to when a street in front of or near their home is closed on a temporary basis, nor have Plaintiffs explained how they are not receiving evenhanded treatment. In each of the

---

[21] Am. Compl. ¶ 65, 68, 72, 83, 85.
[22] Am. Compl. ¶ 76.

circumstances laid out, the same alleged hindrance would affect individuals with disabilities as other individuals. For example, any individual seeking to enter a gated area in a vehicle could claim to be harassed, just as any individual, whether having a disability or not, could claim that they fear ambulance services could be hindered. Thus, even if it is assumed that the temporary barriers in the Limited Local Access Open Streets do hinder the provision of emergency services, delay or deter ride-share vehicles from entering, or even prevent vehicular access at times because a truck illegally parks in front of such location, there is simply no basis to state a claim that this is discriminatory under the ADA.

What Plaintiffs seek is nothing short of a decision from this Court that any street closure by the City, whether temporary like Open Streets or road work, or permanent, would intrinsically form the basis of an ADA claim, based on Plaintiffs' contention that where street access is generally blocked to vehicular access, an individual with a disability is treated in a manner that is not "even-handed." The City, like any municipality, must retain the authority to close public streets either permanently or on a temporary basis. Plaintiffs point to no rule, regulation, precedent, or otherwise, that would support their proposition. The City acknowledges that a municipal entity must make "affirmative accommodations to ensure that facially neutral rules do not in practice discriminate against individuals with disabilities." Henrietta D. v. Bloomberg, 331 F.3d 261, 275 (2d Cir. 2003). However, what Plaintiffs challenge here, as the court in Doe characterized, "is not illegal discrimination against the disabled, but the substance of the services provided." Doe v. Pfrommer, 148 F.3d 73, 84 (2d Cir. 1998). And even still, Plaintiffs have not alleged a service, program, or activity, other than access to vehicular transportation, to which they are being deprived of access. The concerns discussed in Point III are not specific to Plaintiffs, but to all individuals generally who live, work, or travel on Open Streets--and the promulgated DOT rules address these issues. The rules contemplate that

-21-

Access-a-Ride, ride-share, and delivery vehicles are permitted to enter into Limited Local Access Open Street locations.  The rules also authorize provisions be made to help individuals with disabilities to temporarily move barriers, and specify permitted conduct in Open Streets.

Moreover, the claims in the Amended Complaint are conclusory and unsupported by any evidence or support and should also be dismissed on such ground.  "In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations.  Accordingly, [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotations omitted).  Most of the alleged injuries are made up of mere statements of perceived fears, or incidents occurring on unspecified dates.  While photographs are included, they are undated.  To the extent enforcement is sought by Plaintiffs for specific violations of the Program, or where, for example, a truck is allegedly illegally parked near a barrier, such violations, like the violation of any other City laws, should be reported to the City.  Plaintiffs cannot state a claim under the ADA when there is no basis to demonstrate that individuals with disabilities are not being treated in an even-handed manner in the provision of any City program, service, or activity.

### POINT IV

### PLAINTIFFS' CLAIMS REGARDING BLOCKED ACCESS TO CURBS ALSO FAIL TO STATE A CLAIM AND PLAINTIFFS LACK STANDING TO ASSERT SUCH CLAIM

The Amended Complaint states that Plaintiffs have been denied the opportunity not only to benefit from the provision of streets, but also "sidewalks." Am. Compl. ¶ 148.  It claims specifically that "34th Avenue now also contains large planters that obstruct sidewalk

curb cuts, making it impossible for someone using a wheelchair to mount the curb" and that barricades "frequently block curb cuts." Am. Compl. ¶¶ 125, 11. These claims should be dismissed because Plaintiffs lack standing as they fail to allege they suffered an injury-in-fact. In any event, these claims should be dismissed because the Program does not authorize the blocking of curb cuts. Moreover, the claims are not pled in sufficient detail.

First and foremost, no Plaintiff has alleged that he or she was negatively impacted by any alleged barrier to curb or crosswalk access. See Am. Compl. ¶¶ 46-86. It should come as no surprise that not one individual, in this lawsuit or otherwise, has alleged any type of injury based on their inability to access sidewalks, or curb cuts, given that Open Streets expands pedestrian sidewalk access into streets by safely extending the ability to travel on foot or by wheelchair beyond the City's sidewalks. In Guglielmo, the elements required to establish standing in the ADA context are detailed:

> In actions brought under the ADA, the Second Circuit has 'found standing (and therefore an injury in fact),' Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 187 (2d Cir. 2013) (per curiam), where a plaintiff '[i] alleges past injury under the ADA, [ii] shows that it is reasonable to infer from his or her complaint that the discriminatory treatment will continue, and [iii] shows that it is reasonable to infer that he or she 'intend[s] to return to [the public accommodation].' Harty v. Greenwich Hosp. Grp., LLC, 536 F. App'x 154, 154-55 (2d Cir. 2013) (summary order) (alterations in Greenwich Hosp. Grp., LLC) (quoting Kreisler, 731 F.3d at 187-88).

Guglielmo v. Neb. Furniture Mart, Inc., 2020 WL 7480619, *3 (S.D.N.Y. 2020).

Not one of the Plaintiffs allege that they have been negatively impacted in their ability to cross streets due to a blocked crosswalk or curb cut. No Plaintiff has come forward to claim that they have been injured or that they cannot access certain locations by wheelchair (as is only generally asserted in the Amended Complaint). While the Amended Complaint speculates that such instances may recur, in reality, the DOT rules do not permit placement of planters in

front of curb cuts.[23]  Also, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy…if unaccompanied by any continuing, present adverse effects." Renne v. Geary, 501 U.S. 312, 320-321 (1991).  In any event, Plaintiffs have not pled the City was aware of any specific violations and declined to take steps to correct them.  Accordingly, any claim that the City has obstructed sidewalks as part of the Open Streets program should be dismissed.

**POINT V**

**CERTAIN PLAINTIFFS FAIL TO STATE A CLAIM DUE TO MOOTNESS**

The Limited Local Access Open Streets complained of in this litigation include the following general locations: (i) Berry Street in Brooklyn; (ii) 34th Avenue in Queens; (iii) Avenue B in Manhattan; and (iv) South Portland Street in Brooklyn.  However, DOT removed the Open Street on South Portland on September 26, 2023, and accordingly Plaintiffs Jonakait and Huebener should be dismissed from this litigation.

Mootness is a jurisdictional doctrine that ensures federal courts only decide live cases or controversies. See Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 160 (2016).  Also, "[a]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Alvarez v. Smith, 558 U.S. 87, 92 (2009).  Specifically, in the ADA context, "a case will be rendered moot only where a defendant meets the 'formidable burden' of demonstrating that it is 'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'  Defendant here argues that Plaintiff's allegations either are or will become moot due to its past and future commitments to making the Website accessible." Guglielmo, 2020 WL 7480619, *6 (quoting Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. 528 U.S. 167,

---

[23] 34 RCNY 4-21(c)(9)(iv) states: "Sidewalks, including pedestrian ramps and curb cuts, must be free of obstruction and readily accessible at all times."

190 (2000)).   The DOT web site reflects that the South Portland Open Street is no longer operating.   Moreover, no applications were received for this location for the 2024 Open Streets season.   Accordingly, there is no actual controversy at this time, nor can the conduct complained of be reasonably expected to recur.   Accordingly, Plaintiffs Jonakait and Huebener and their claims should be dismissed from this litigation on mootness grounds.

**POINT VI**

**THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' NYSHRL AND NYCHRL CLAIMS**

Pursuant to 8 U.S.C. § 1367(c)(3), the District Court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." See e.g. Bvba v. Apm Music Servs. LLC, 2022 WL 17539113 (S.D.N.Y. 2022).   Since Plaintiffs' federal claims should be dismissed, the assertion of supplemental jurisdiction over the state law claims is not appropriate. "The Second Circuit has held that 'in the absence of any remaining federal claims, the appropriate analytic framework to be applied to discrimination claims based on a 'disability' as defined by the New York state and municipal law is a question best left to the court of the State of New York…the state-law claims should be dismissed so that the state courts can, if so called upon, decide for themselves whatever questions of state law this case may present." Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285, 317 (S.D.N.Y. 2003) (quoting Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001); see also e.g. Cain v. Rambert, 2014 WL 2440596 (E.D.N.Y. 2014).

**CONCLUSION**

For the above reasons, the Court should grant City defendants' motion and dismiss the Amended Complaint in its entirety.

-25-

Dated:     New York, NY
            March 1, 2024

                               HON. SYLVIA O. HINDS-RADIX
                               Corporation Counsel of the City of New York
                               Attorney for City defendant
                               100 Church Street
                               New York, NY 10007

                                                s/
                               _____
                               Adam M. Moss
                               Senior Counsel
                               (212) 356-4017
                               amoss@law.nyc.gov

Michelle Goldberg-Cahn,
Sherrill Kurland, of counsel