**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JESS CHARLES, KRYSTYNA CHUDA, ROSLYN
HUEBENER, MILL JONAKAIT, CARMEN
KOLODICH, RICHARD KOLODICH, MARY
MCGUCKIN, DEBORAH PERRIN, JOHN DAVID
TINEO, KRYSTYNA ZABLOCKI, and
TADEUSZE ZABLOCKI,

                      Plaintiffs,

      v.

THE CITY OF NEW YORK, NORTH BROOKLYN
PARKS ALLIANCE, NORTH BROOKLYN OPEN
STREETS COMMUNITY COALITION, NORTH
BROOKLYN MUTUAL AID, 34TH AVENUE
OPEN STREETS COALITION, NOEL
HILDALGO, KEVIN LACHERRA, JEFFREY
HODSON, NUALA O'DOHERTY-NARANJO,
AND JIM BURKE,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No.: 23-cv-03108-EK-CLP

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CITY OF NEW YORK'S MOTION TO DISMISS

**VALLI KANE & VAGNINI LLP**

Matthew L. Berman
mberman@vkvlawyers.com
600 Old Country Road
Garden City, New York 11530
Tel: (516) 203-7180
Fax: (516) 706-0248
*Attorneys for Plaintiffs*

# Table of Contents

Preliminary Statement.................................................................................................................. 1

Legal Argument ........................................................................................................................... 3

I.    Legal Standard Applicable to a Motion to Dismiss ............................................................ 5

  A    Elements of Plaintiffs' ADA and Rehabilitation Act Claims ............................................ 5

  B    ADA Accessibility Requirements for "Facilities"............................................................. 7

  C    ADA Accessibility Requirements for "Services, Programs, or Activities"......................... 9

II.    Streets, Sidewalks and Curb-cuts are both "Facilities" and "Services, Programs, or Activities" that the City Must Make and Keep Accessible to the Disabled ................................... 9

III.    The City Must Remove Obstructions that Deny the Disabled Equal Access .................. 12

IV.    Plaintiffs have Standing under the ADA and Rehabilitation Act ..................................... 13

V.    Plaintiffs' Claims are not Moot....................................................................................... 15

  A    Plaintiffs' Claims are not Mooted Due to New DOT Rules ............................................ 15

  B    Plaintiffs' Claims are not Mooted Due to the City's removal of South Portland from the Program.................................................................................................................................... 16

Conclusion ................................................................................................................................. 17

# Table of Authorities

## Cases

28 C.F.R. §§ 35.149 ................................................................................................ 14

*American Council of the Blind of New York, Inc. v. City of New York,* 495 F. Supp.3d 211, 230-231 (S.D.N.Y. 2020) .......................................................................................... 10

*Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) ............................ 9

*Brooklyn Center for Independence of the Disabled v. Metropolitan Transp. Auth.*, 11 F.3th 55, 64 (2d Cir. 2021) .................................................................................................... 13

*Brown v. County of Nassau*, 736 F. Supp.2d 602, 612 (E.D.N.Y. 2010) ..................... 12

*Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) .......................................................... 5

*Cohen v. City of Culver*, 754 F.3d 699 (9th Cir. 2014)................................................. 13

*Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016) ................................................... 4, 14

*Disability Rights New York v. City of New York,* 2023 U.S. Dist. Lexis 175917 (S.D.N.Y. Sept. 28, 2023) ...................................................................................................... 15

*Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196 (2d Cir. 2014)..... 5

*Frame v. City of Arlington*, 657 F.3d 215, 226 (5th Cir. 2011)..................................... 9

*Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)..................................... 10

*Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003)...................................... 6

Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 44 (2d Cir. 1997) ................ 10

*Landis v. Washington State Major League Baseball Stadium Pub. Facilities Dist.,* 403 F. Supp.3d 907, 919 (W.D. Wash. 2019) .................................................................. 13

Li v. App. Div. of New York Supreme Ct., WL 4240945, at *1 (2d Cir. June 29, 2023)........... 10

*Lowell v. Lyft*, 2022 WL 19406561, *5 (S.D.N.Y. Dec. 22, 2022) ............................. 13

*Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011).............................................. 5

*Montoya v. City of San Diego,* 434 F. Supp.3d 830, 849 (S.D. Cal. 2020) ................. 12

*Munoz v. City of Los Angeles,* 558 F. Supp.3d 845, 849 (C.D. Cal. 2012) ................ 12

*Nielson v. Rabin,* 746 F.3d 58, 62 (2d Cir. 2014) ...................................................... 5

*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998)............................... 9

*Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) ........................................... 5

Scharff v. County of Nassau, 2014 WL 2454639, at *12 (E.D.N.Y. June 2, 2014)................... 11

## Statutes

29 U.S.C. § 794(b) ................................................................................................. 9, 14

42 U.S.C. § 12101(a)(3)............................................................................................. 8

42 U.S.C. § 12101(a)(5)............................................................................................. 8

42 U.S.C. § 12132.............................................................................................. 6, 7, 14

42 U.S.C. § 12134(a) ................................................................................................. 7

U.S.C. § 12201(a) ..................................................................................................... 9

## Other Authorities

*2010 ADA Standards for Accessible Design* (Sept 15, 2010) ...................................... 8

House Report No. 101-485, 1990 U.S.C.C.A.N. at 367 ............................................... 8

## Regulations

28 C.F.R. § 35.133 .......................................................................................................... 12

28 C.F.R. § 35.133(a) .................................................................................................... 12

28 C.F.R. § 35.149 ............................................................................................................ 7

28 C.F.R. § 35.150 ............................................................................................................ 7

28 C.F.R. § 35.151 ......................................................................................................... 7, 8

28 C.F.R. § 35.151(a) ....................................................................................................... 8

28 C.F.R. §§ 35.133(a) ..................................................................................................... 6

28 C.F.R. §§ 35.149 – 151 ............................................................................................. 12

28 C.F.R. §§ 35.149-52 ................................................................................................ 6, 7

28 C.F.R. Part 35 ............................................................................................................... 7

28 C.F.R. Part 35, App. B ........................................................................................... 4, 14

28 C.F.R. Part 35, Subpart B .......................................................................................... 7

28 CFR § 35.151 ............................................................................................................. 13

Plaintiffs, through their undersigned counsel, submit this memorandum of law in opposition to the motion to dismiss (the "Motion") the amended complaint (the "Complaint," ECF Dkt 68) pursuant to Fed. R. Civ. P. Rules 12(b)(1) and 12(b)(6) and the related memorandum of law ("Def. Mem.") filed by the City of New York (the "City") in support of its Motion.

## Preliminary Statement

This case is about a group of disabled Plaintiffs (Compl. ¶¶ 22 – 32) that are being denied equal access to the City's public services through the City's implementation of the Open Streets program. As set forth in the Complaint, the City implemented its misnamed Open Streets program (the "Program") in order to close certain streets, sidewalks and curb-cuts (collectively, the "Open Streets") in order to reserve their use for pedestrians and cyclists. *Id*. at ¶¶ 3-5,  While the Program generally precludes vehicular traffic by blocking off the Open Streets using metal police stanchions, concrete blocks and planters (*id*. at ¶ 3), the City still allows local vehicular through-traffic to drive and park on the Open Streets. *Id*. at ¶ 40 ("local traffic is exempt from the Program's restriction on through-traffic.")  The problem is that while able-bodied pedestrians and local drivers are able to move through or around these obstacles to access the Open Streets (*id*. at ¶ 43), the disabled Plaintiffs are unable to do the same. *Id*. at ¶¶ 47 - 49 (Jess Charles), 50 - 53 (Krystyna Chuda), 54 – 56 (Roslyn Huber), 57 – 59 (Mill Jonakait), 60 – 65 (Carmen Kolodich), 66 – 68 (Richad Kolodich), 69 – 72 (Mary McGuckin), 73 – 76 (Deborah Perrin), 77 – 80 (John David Tineo), 81 – 83 (Krystyna Zablocki), 84 – 86 (Tadeusz Zablocki).

The gravamen of the Complaint is that the Program, as implemented, denies the disabled access to Open Streets that the able-bodied are able to use by sidestepping or bypassing the

City's barriers.[1]  This turns Plaintiffs into shut-ins who cannot engage in their daily life activities with dignity.  *Id*. at ¶ 1.  This problem is worsened by the fact that the City and its volunteer "partners" who manage the Program are unavailable or unwilling to accommodate the disabled by moving the barricades out of the way to make the Open Streets accessible.  *Id*. at ¶¶ 110 - 120.  The City's plan to expand the program to eventually include more than 100 miles of public roadways and 20 miles of public bus lanes will further restrict Plaintiffs' freedom to live independently.  *Id*. at ¶ 1.

Contrary to the City's contention (Def. Mem. at 2), Plaintiffs do not assert that the City cannot have an Open Streets program at all, or cannot restrict particular streets or services to the public in general.[2]  Instead, Plaintiffs contend that the City and its volunteer partners violate federal and state law by using barriers to deny access to Open Streets *only* to the disabled (because everyone else can move the barriers or bypass them) and by failing to provide any reasonable accommodations for their disabilities.  Compl. at ¶¶ 145 – 159; *id.* at "Prayer for Relief."  Plaintiffs allege that the City has a legal duty to provide the disabled with equal access to its Open Streets, and a duty to ensure that any newly constructed or altered Open Streets are similarly accessible.  *Id*. at 111.

---

[1] The Program is also problematic for a number of additional reasons, including the continuous, daily restriction it imposes upon vehicular traffic (*id*. at ¶ 4), the related harassment of local Access-A-Ride, Uber, Lyft and delivery drivers that the disabled rely upon (*id*. at ¶¶ 5, 34) and who are typically prohibited from leaving their vehicles to move barricades in order to serve disabled passengers (*id*. at ¶¶ 64, 75, 95, 117-19), the violation of the New York City Fire Code (*id*. at ¶109) and the obstruction of ambulances and other emergency services (*id*. at ¶¶ 15, 16, 34, 53, 63, 80, 87, 95, 109, 119, 124, 127).

[2] While the City implies that Plaintiffs seek an order "enjoining the Open Streets program" in its entirety (Def. Mem. at n.5), that inference is incorrect.  Instead, Plaintiff's prayer for relief seeks three things: (a) "An order granting Plaintiffs appropriate injunctive and declaratory relief enjoining the Open Streets Program"; (b) "An order granting Plaintiffs reasonable attorneys' fees and expenses and other compensable costs and expenses"; and (c) "An order granting Plaintiffs such other, further and different relief as the nature of the case may require or as may determined to be just, equitable and proper by this Court."  Compl. at pp. 55 of 55.  Accordingly, the Complaint contemplates injunctive and declaratory relief requiring Defendants to engage in an interactive dialogue concerning reasonable accommodation of Plaintiffs' disabilities.

## Legal Argument

The Complaint asserts claims under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (the "Rehabilitation Act"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Compl. ¶¶ 145 – 159.

The Motion seeks to dismiss the Complaint for lack of subject-matter jurisdiction (under Fed. R. Civ. P. Rule 12(b)(1)) and for failure to state a claim (under Fed. R. Civ. P. Rule 12(b)(6)).

In support of dismissal, the City make six hyper-technical arguments, each addressing only secondary facts (that flesh out the Complaint for context) while ignoring the central thrust of the Complaint, which concerns the City's failure to provide Plaintiffs with *equal access* and reasonable accommodation.

The City's six points of argument can be paraphrased as:

(1) the ADA doesn't prohibit the City from making temporary limitations on vehicular access to certain streets (Def. Mem., Point I, at 5-12);

(2) The ADA doesn't require the City to accommodate the disabled when it modifies a "facility" (*id.*, Point II, at 13-18);

(3) Limitations on ride share and Access-a-Ride don't violate the ADA (*id.*, Point III, at 19-21);

(4) Blocked Curbs don't violate the ADA and Plaintiffs lack standing to assert blocked curb violations because they haven't alleged a cognizable injury (*id.*, Point IV, at 22-23);

(5) Certain of Plaintiffs' claims fail for mootness because the City removed one of the Open Streets from the Program (*id.*, Point V, at 24); and

3

(6) The Court should decline supplemental jurisdiction over Plaintiffs' claims arising under state and city law (*id*., Point VI, at 25).

These arguments are meritless for several reasons:

Points I and III fail because Plaintiffs do not contend that they have any right to access particular Open Streets in a time, place or manner that others cannot.  Instead, they just want *equal access* to the same Open Streets that the able-bodied have access to, but that disabled people find inaccessible due to the City's obstructions.

Points II and IV fail because under both the ADA and the Rehabilitation Act, Open Streets (including curbs) are not just "facilities," they are also "services, programs, or activities." [3]

Point V fails because the elimination from the Program of South Portland Avenue doesn't moot the claims of plaintiffs Jonakait and Huebener, because each has also been denied equal access to the Willoughby Avenue Open Street (*see infra*).

And if the Court agrees with Plaintiffs on any of these five points, then it should also reject Point VI of the City's argument and exercise supplemental jurisdiction over Plaintiffs' claims under state and City law.[4]

---

[3] The standards imposed by Title II of the ADA are substantially similar to those imposed by the Rehabilitation Act. *See Davis v. Shah,* 821 F.3d 231, 259 (2d Cir. 2016); *see also* 28 C.F.R. Part 35, App. B ("Because title II of the ADA essentially extends the antidiscrimination prohibition embodied in section 504 to all actions of State and local governments, the standards adopted in this part are generally the same as those required under section 504... .").

[4] The City attacks only the sufficient of Plaintiffs' pleading of their ADA and Rehabilitation Act claims, and asserts that if those claims are dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' claims under the NYSHRL and NYCHRL.  Def. Mem., at 25.  Because the City does not make any independent challenge to the sufficiency of Plaintiffs' pleading of their non-federal claims, Plaintiffs do not address the legal standards applicable to those claims in this opposition.

## I.   **Legal Standard Applicable to a Motion to Dismiss**

On a motion to dismiss pursuant to Rule 12(b)(6), the district court's task is to assess the pleadings to determine whether they contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023). "A complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).  In deciding a motion to dismiss, the "Court accepts as true the pleadings' factual allegations and draws all reasonable inferences in the non-movant's favor." *Nielson v. Rabin,* 746 F.3d 58, 62 (2d Cir. 2014).

Plaintiffs' allegations here, taken as true, are sufficient to state claims for liability under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (the "Rehabilitation Act"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Accordingly, Defendant's Motion should be denied in its entirety.

### A   Elements of Plaintiffs' ADA and Rehabilitation Act Claims

The elements of a claim under Title II of the ADA and under Section 504 of the Rehabilitation Act are the same. *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196 (2d Cir. 2014).  "To establish a violation under Section 504 or Title II, a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the

defendant because of his disability." *Id.* (internal quotation omitted); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003) (for purposes of Rehabilitation Act, to establish that a defendant is subject to the Act, plaintiffs must establish that the defendant is a recipient of federal funds).

Here, the City does not dispute the first two elements of Plaintiffs' ADA and Rehabilitation Act claims. Nor could it. Plaintiffs have made detailed allegations concerning their individual disabilities. Compl. at ¶¶ 47 – 86. And the City does not dispute that, as a "public entity," it must comply with both the ADA and the Rehabilitation Act or that it receives federal funds as the Complaint alleges (Compl. ¶¶ 101, 151). *See generally*, Def. Mem; *see also* 42 U.S.C. § 12132 (ADA applies to public entities); 28 C.F.R. §§ 35.133(a) (a "public entity shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities"); 28 C.F.R. §§ 35.149-52 (applying non-discrimination principles in the context of access to government programs).

The City disputes only the third element, claiming that because its Open Streets are supposedly "facilities" rather than "services, programs, or activities" the City is not responsible for providing or maintaining equal access to specific Open Streets. *See* Def. Mem. at 8-9, 11 (n. 12), 14. Instead, the City claims that its only obligation is to ensure that the City's entire system of streets, when viewed in its entirety, is accessible to the disabled. Def. Mem. at 10. The City is wrong, because Open Streets are both "facilities" and "services, programs, or activities" under the ADA. This means that the City must make sure that each of its existing Open Streets are maintained as accessible to the disabled, and new or altered Open Streets are held to even heightened accessible standards, explained below.

6

B    ADA Accessibility Requirements for "Facilities"

Title II of the ADA states: "[N[o qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132.  The ADA directs the United States Department of Justice to promulgate

regulations implementing Title II.  42 U.S.C. § 12134(a); *see also* 28 C.F.R. Part 35 (Title II

implementing regulations).

Subpart D of the regulations (titled "Program Accessibility") – applies non-

discrimination principles in the context of access to government programs.  *See* 28 C.F.R. §§

35.149-52.  Subpart D also begins with a broad proscription: "[N]o qualified individual with a

disability shall, because a public entity's facilities are inaccessible to or unusable by individuals

with disabilities, be excluded from participation in, or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any public entity."

28 C.F.R. § 35.149.  The next two sections set out the program accessibility standards applicable

to "existing facilities" (28 C.F.R. § 35.150) and "new construction and alterations" (28 C.F.R. §

35.151).

Subpart B of the regulations (titled "General Requirements") includes provisions

explaining a public entity's duty to ensure that its accessible facilities remain accessible through

ongoing maintenance.  28 C.F.R. Part 35, Subpart B.  While Subpart B "does not prohibit

isolated or temporary interruptions in service or access due to maintenance or repairs", it does

provide that "[a] public entity shall maintain in operable working condition those features of

facilities and equipment that are required to be readily accessible to and usable by persons with

disabilities."  28 C.F.R. § 35.133(a).

The text and history of the ADA and its regulations emphasizes the necessity of eliminating disability discrimination in the provision of public services. *See, e.g.*, 42 U.S.C. § 12101(a)(3) "[D]iscrimination against individuals with disabilities persist in such critical areas as … **transportation** … and access to public services.")(emphasis added); 42 U.S.C. § 12101(a)(5) ("[I]ndividuals with disabilities continually encounter various forms of discrimination, including … the discriminatory effects of architectural, **transportation**, and communication barriers.") (emphasis added); 28 C.F.R. § 35.151 ("Newly constructed or altered street level pedestrian walkways must contain curb ramps ….").  The House Report accompanying the ADA explains: "[t]he employment, **transportation**, and public accommodations section of **this Act would be meaningless if people [with disabilities] were not afforded the opportunity to travel on and between the streets**."  House Report No. 101-485, 1990 U.S.C.C.A.N. at 367(emphasis added).

Newly constructed or altered sidewalks are subject to the even higher standards of 28 C.F.R. § 35.151(a).  This regulation requires that each facility must be "designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities." *Id*.  The regulations implementing the ADA require that each facility altered by a public entity in a manner that affects the usability of the facility must be accessible "to the maximum extent feasible." *Id*. at § 35.151(b)(1).  New construction and alterations must meet specific design standards depending on the date of construction or alteration. *Id*. at § 13.151(c); *see also 2010 ADA Standards for Accessible Design* (Sept 15, 2010).[5]  Newly constructed or altered streets and roads must contain curb ramps or other sloped areas at any intersection having curbs or other barriers to entry from a street level pedestrian walkway. *Id*. at § 35.151(i).

---

[5] Available at https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards_prt.pdf (last visited March 22, 2024)

C      ADA Accessibility Requirements for "Services, Programs, or Activities"

The City's provision and maintenance of pedestrian paths (sidewalks and curb-cuts) also constitutes a "service, program or activity" under Title II of the ADA.  The Supreme Court has already recognized that the ADA's statutory terms are unambiguously broad.  *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998).  Section 504 of the Rehabilitation Act specifically defines the term "program or activity" as "*all of the operations of*" a covered public entity, 29 U.S.C. § 794(b) (emphasis added), and Congress required Title II to be interpreted at least as broadly as Section 504, *see* 42 U.S.C. § 12201(a).

Courts have thus routinely concluded that sidewalks are "services, programs, or activities" under the ADA.  *See Frame v. City of Arlington*, 657 F.3d 215, 226 (5th Cir. 2011) (en banc) ("Building and altering city sidewalks unambiguously are 'services' of a public entity under any reasonable understanding of that term."); *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) ("[M]aintaining public sidewalks is a normal function of a city" such that "[m]aintaining their accessibility for individuals with disabilities therefore falls within the scope of Title II.").

**II.    Streets, Sidewalks and Curb-cuts are both "Facilities" and "Services, Programs, or Activities" that the City Must Make and Keep Accessible to the Disabled**

The City admits that its individual Open Streets are "facilities" under the ADA but contends that its Open Streets are not "Services, Programs or Activities." Def. Mem. at 8.  As a threshold matter, the City is barred from asserting this argument on the grounds of collateral estoppel:

> Collateral estoppel ... prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding. The doctrine applies where: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the parties had a full and fair opportunity to litigate the issue; and

(4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

Li v. App. Div. of New York Supreme Ct., WL 4240945, at *1 (2d Cir. June 29, 2023).

Here, the City raised this identical issue, actually litigated it fully and fairly, and lost when its argument was rejected by this Court. *See American Council of the Blind of New York, Inc. v. City of New York,* 495 F. Supp.3d 211, 230-231 (S.D.N.Y. 2020).

In *Council of the Blind*, an organization supporting people with vision disabilities brought a class action against the City due to the City's failure to provide non-visual crossing information at a vast majority of its intersections that utilize traffic signals, and the City's failure to accommodate pedestrians with vision disabilities. The Court granted summary judgment, in part, in favor of plaintiffs on their claims under both the ADA and the Rehabilitation Act. In doing so, made a number of points that are equally applicable here.

First, the Court held that a public entity, such as the City of New York, violates the provisions of both the ADA and the Rehabilitation Act when it fails to provide "meaningful access" to the benefits of its services, programs or activities. *Id.* at 229.

Second, the Court noted that the ADA does not expressly define "services, programs or activities." *Id.* at 230, citing *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 44 (2d Cir. 1997), *superseded on other grounds as recognized in Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 (2d Cir. 2001). But the Court found that the Rehabilitation Act does define the term "program or activity" to include "all of the operations" of any instrumentality of a state or local government (*id.* at 230, citing 29 U.S.C. § 794(b)(1)(A) and *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (treating Title II and Rehabilitation Act claims "identically")). The Court stated that "the ADA's legislative history confirms that its reach is similar: 'Title II of the bill makes all activities of State and local governments subject to' the ADA's prohibition on

disability discrimination. H.R. Rep. No. 101-485, pt. 2, at 151 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 434." The Court explained that consistent with this history, the Second Circuit has construed "services, programs, or activities" as a "catch-all phrase that prohibits all discrimination by a public entity, regardless of the context." *Council for the Blind, supra* at 230.

Finally, the Court remarked that the Second Circuit has counseled against "hairsplitting arguments" concerning which "aspects of a city's operations fall under the ADA's broad protections. Instead, it has instructed that any normal function of a governmental entity is properly treated to be a service, program or activity under the ADA and Rehabilitation Act." *Id.* at 230 (cleaned up), citing *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (holding that Title II covers "anything a public entity does," and collecting circuit cases holding similarly). The City's reliance upon *Scharff v. County of Nassau*, 2014 WL 2454639, at *12 (E.D.N.Y. June 2, 2014), the only controlling authority it offers in support of its "hairsplitting" attempt to differentiate between a "facility" and "services, programs or activities," fails because *Council for the Blind* considered *Scharff* in reaching its decision. *Council for the Blind*, *supra*, at 230.

The Court in *Council for the Blind* ultimately concluded that the City's maintenance of signalized intersections and the pedestrian grid plainly constitute a "service, program or activity" of a public entity because those are normal functions of the City, and that the City and its Department of Transportation "have broad authority for the City's streets and oversee, among other things, the installation, repair, and maintenance of New York City traffic signals, sidewalks, crosswalks, bicycle lanes, and roadways." *Council for the Blind, supra*, at 231.

So too here. The City and its Department of Transportation still have broad authority over the City's streets and still oversee the installation, repair and maintenance of the City's

sidewalks, crosswalks, bicycle lanes and roads. The City does not contend otherwise. Accordingly, because the instant case is on all fours with *Council for the Blind*, the City's motion to dismiss should be denied.

## III. The City Must Remove Obstructions that Deny the Disabled Equal Access

Because the City's streets, sidewalks and curb-cuts are both "facilities" and "services, programs, or activities" under Title II of the ADA and the Rehabilitation Act, the City must ensure that they comply with the accessibility requirements of the ADA, for both existing and new or altered Open Streets. *See* 28 C.F.R. §§ 35.149 – 151. The City also has an ongoing requirement to maintain its Open Streets to ensure their continued accessibility. *See* 28 C.F.R. § 35.133. Together, these regulations require that individuals with disabilities are provided with fully accessible government services. *See Brown v. County of Nassau*, 736 F. Supp.2d 602, 612 (E.D.N.Y. 2010) ("[I]ndividual barriers to access, while not themselves violations under this standard, can cumulatively result in a facility being not readily accessible.").

Here, Plaintiffs' Complaint alleges that the City's Open Streets have become inaccessible to them, because the City has obstructed them using metal police stanchions, concrete blocks and planters (Compl. at ¶ 3), implicating the ADA's maintenance requirements under 28 C.F.R. § 35.133(a). This regulation requires that a "public entity [must] maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." It also requires that public entities ensure that accessible pathways are free from obstructions. *See Munoz v. City of Los Angeles,* 558 F. Supp.3d 845, 849 (C.D. Cal. 2012) ("temporary or removable obstructions, even when placed by third parties, may constitute an ADA violation when those obstructions are systematic or pervasive or persist for an unreasonable amount of time."); *see also Montoya v. City of San Diego,* 434 F. Supp.3d 830, 849 (S.D. Cal. 2020) (allowing lawsuit challenging city's failure to

keep electric scooters from blocking sidewalks); *Cohen v. City of Culver*, 754 F.3d 699 (9th Cir. 2014) (violation of ADA can be found to occur where a curb ramp connecting streets to a sidewalk is obstructed). This obligation is in addition to the City's initial obligation to ensure that its construction and alterations are initially designed to be accessible pursuant to 28 CFR §§ 35.149 – 151.

Plaintiffs allege that by installing persistent (albeit "temporary") barriers, and additional "traffic calming" mechanisms, the City has engaged in alterations or new construction and that its Open Streets are thus subject to the accessibility requirements codified in 28 CFR § 35.151 (Compl. at 111). These allegations more than suffice to state a claim for relief under both the ADA and the Rehabilitation Act. *See Cohen, supra*, at 699 ("[w]hile temporary obstructions do not violate the ADA, obstructions that persist beyond a reasonable period of time do violate the statute.")(citing 28 C.F.R. § 35.133(b)); *see also Brooklyn Center for Independence of the Disabled v. Metropolitan Transp. Auth.*, 11 F.3th 55, 64 (2d Cir. 2021) (consistent elevator outages); *Landis v. Washington State Major League Baseball Stadium Pub. Facilities Dist.,* 403 F. Supp.3d 907, 919 (W.D. Wash. 2019)(persistent failures of a maintenance plan can constitute a violation of the ADA).

## IV.    Plaintiffs have Standing under the ADA and Rehabilitation Act

The City contends that Plaintiffs do not have standing to make challenges to its practices concerning curb cuts and cross-walks because they have supposedly failed to allege that they suffered an actual injury in fact. Def. Mem. at 22-24. This is not the applicable standard under the ADA. Instead, "in the context of the ADA, if a plaintiff knows that accessibility barriers exist, the plaintiff need not establish that he or she would have otherwise actually or imminently visited and/or patronized a place with such barriers." *Lowell v. Lyft*, 2022 WL 19406561, *5 (S.D.N.Y. Dec. 22, 2022) (collecting cases).

13

As alleged in the Complaint, the City's Open Streets program results in the placements of barricades that block the streets, crosswalks, and sidewalks, including concrete blocks and heavy planters that block the curb cuts.  Compl. ¶3.   Collectively, these obstructions operate to exclude Plaintiffs from accessing the areas designated as Open Streets, including roads, crosswalks, sidewalks and curb-cuts.  Plaintiffs are thus denied access to the Open Streets because of their disabilities, because Plaintiffs cannot physically move or bypass the barriers, while able-bodied members of the general public are able to do so.  Compl. at ¶¶ 40, 43, 47 – 86. This is exactly the form of injury that both the ADA and Rehabilitation Act seek to remedy.  *See Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016) (the standards imposed by Title II on public entities are generally equivalent to those imposed upon private entities that receive federal funds under the Rehabilitation Act); *see also* 28 C.F.R. Part 35, App. B (noting that title II of the ADA extends the antidiscrimination prohibition in section 504 of the Rehabilitation Act to all actions of State and local governments); 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."); 29 U.S.C. § 794(b) (a federal "program or activity" includes "all of the operations of " a public entity);  28 C.F.R. §§ 35.149 ("[N]o qualified individual shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.").

Here, Plaintiffs are both excluded from participation in and denied the benefits of the Open Streets program because the roads, crosswalks, sidewalks and curb-cuts included in the Program are being blocked with physical obstacles.  Plaintiffs may thus invoke both the ADA

and the Rehabilitation Act in pursuit of appropriate injunctive relief.  *See Am. Council of the Blind v. City of New York, supra,* at 569 (S.D.N.Y. 2021).

**V.    Plaintiffs' Claims are not Moot**

Finally, the City contends that Plaintiffs' claims are mooted by two developments that transpired since the filing of the Amended Complaint.  There are two reasons why the City is incorrect.

A        Plaintiffs' Claims are not Mooted Due to New DOT Rules

First, the City contends that its Department of Transportation has promulgated new rules that will make accommodations to allow barriers to be removed.  Def. Mem. at 6-7.  This does not moot Plaintiffs' claims because, as set forth in the Complaint, the City has made it very clear that it is unwilling to actually follow any of the applicable rules, including the accessibility rules embedded into the ADA and the Rehabilitation Act and their implementing regulations.  Compl. ¶¶ 110 – 120.  The City routinely fails to enforce even its own regulations.  *See, e.g., Disability Rights New York v. City of New York,* 2023 U.S. Dist. Lexis 175917 (S.D.N.Y. Sept. 28, 2023) (denying, in part, motion for judgment on the pleadings seeking to dismiss Plaintiffs' class action claims that the City violated the ADA by failing to enforce its laws prohibiting parking on sidewalks).

The proposed rules do not **require** the City to do anything, as they are phrased as permissive, not mandatory rules.  For example, the proposed rule 4-21(b)(10)(ii) says "The Department may, on certain limited local access open streets, provide services to assist individuals who (i) are eligible for Access-A-Ride services; (ii) hold a New York City parking permit for people with disabilities; or (iii) hold a New York State permanent parking permit for people with severe disabilities, or another state's equivalent, to temporarily move the barriers to facilitate local vehicle access."

The proposed rules also don't regulate all Open Streets (they only cover "certain limited local access open streets") and don't apply to all individuals who are disabled under the ADA, only a small subset of the disabled who possess City or State parking permits for people with disabilities. Nor does anything in the Rules require the City to implement ADA or Rehabilitation Act accessibility standards or to be present to accommodate the disabled by removing barriers that impede them and their vehicles.

Worse, the City's proposed rules are likely to decrease, not increase, accessibility. For example, Section 4-21(d)(27) allows any person to "bring or place chairs" (and by inference, tables, even though the rules prohibit them, because the rules are not enforced) on "any pedestrian area of an open street, unless otherwise restricted by the Department," which is likely to further impede Plaintiffs' access to streets and sidewalks. Nor does this section of the rules require anyone to remove these chairs or tables. This doesn't cut it.

B    <u>Plaintiffs' Claims are not Mooted Due to the City's removal of South Portland from the Program</u>

Second, the City contends that it has removed South Portland Avenue from the Program, mooting the claims of plaintiffs Mil Jonakait and Roslyn Huebener. Def. Mem. at 24-25. But both Ms. Jonakait and Ms. Huebener are still harmed by the Open Streets program. The Complaint alleges that Ms. Jonakait lives on Carlton Avenue, approximately three blocks from Willoughby Avenue and South Portland, which are both Open Streets. Compl. ¶ 58. Ms. Jonakait drives, because one of her legs is significantly shorter than the other, and walking is very difficult for her. *Id.* at ¶ 59. Since the Complaint was filed, the City has purportedly removed South Portland from the Open Streets program. Even so, Ms. Jonakait is still impeded by the City's restriction of her right to obtain equal access to Willoughby Avenue now that the City has removed South Portland from the Program. The Willoughby Avenue Open Street runs

16

for a length of eight blocks and is closed twenty-four hours a day, seven days a week, 365 days a year.[6]

Likewise, Ms. Huebener lives on the corner of Lafayette Avenue and South Portland Avenue.  *Id*. at ¶ 54.  She has an incurable degenerative spinal disease which means her spine may become worse or fracture from physical stress.  *Id*.  She needs to drive daily for work, including to her building located on the corner of Adelphi Street and Willougby Avenue, which is also an Open Street.  *Id*. at 56.  She frequently needs to access the driveway of that building, which requires moving an Open Streets barrier to enter the block.  *Id*.  Accordingly, despite the removal of South Portland Avenue from the Open Streets Program, Ms. Huebener is, like Ms. Jonakait, still impeded by the City's restriction on her right to obtain equal access to Willoughby Avenue.

<u>**Conclusion**</u>

For the reasons set forth above, Plaintiffs have adequately pled their ADA and Rehabilitation Act claims and the City's Motion should be denied in its entirety.

    Dated:  Garden City, New York
           March 22, 2024

                     **VALLI KANE & VAGNINI LLP**

                 By: <u>/s/ *Matthew L. Berman*</u>

---

[6] *See* https://www.nyc.gov/html/dot/html/pedestrians/openstreets.shtml (last accessed March 22, 2024) (New York City Dep't of Transportation Open Streets page); *see also* https://www.brooklynpaper.com/fort-greene-willoughby-avenue-open-street/ (last accessed March 22, 2024).  The Court may take judicial notice of these materials.  *See, e.g., Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) ("although these documents are not mentioned on the face of the complaint, we have previously held that on a Rule 12(b)(6) motion to dismiss a court may consider matters of which judicial notice may be taken") (internal citation omitted).

Matthew L. Berman, Esq.
MBerman@vkvlawyers.com
600 Old Country Road
Garden City, New York 11530
Tel: (516) 203-7180
Fax: (516) 706-0248

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 22, 2024 a true and correct copy of Plaintiffs'

Memorandum of Law in opposition to Defendant City of New York's Motion to Dismiss was

served via electronic email on all counsel of record.

Dated: March 22, 2024
Garden City, New York

<u>*/s/ Matthew L. Berman*</u>
Matthew L. Berman, Esq.