Index No. 23-CV-03108-EK-CLP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JESS CHARLES, KRYSTYNA CHUDA, ROSLYN HUEBENER, MILL JONAKAIT, CARMEN KOLODICH, RICHARD KOLODICH, MARY MCGUCKIN, DEBORAH PERRIN, JOHN DAVID TINEO, KRYSTYNA ZABLOCKI, and TADEUSZE ZABLOCKI,

Plaintiffs,

vs.

THE CITY OF NEW YORK, NORTH BROOKLYN PARKS ALLIANCE, NORTH BROOKLYN OPEN STREETS COMMUNITY COALITION, NORTH BROOKLYN MUTUAL AID, 34TH AVENUE OPEN STREETS COALITION, NOEL HIDALGO, KEVIN LACHERRA, JEFFREY HODSON, NUALA O'DOHERTY-NARANJO, AND JIM BURKE,

Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CITY DEFENDANT'S MOTION TO DISMISS**

*SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for City Defendant*
*100 Church Street*
*New York, NY 10007*

*Of Counsel: Adam M. Moss and*
*Sherrill Kurland*
*Tel: (212) 356-4017*
*amoss@law.nyc.gov*
*skurland@law.nyc.gov*

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
|     1. Open Streets Does Not Violate the ADA, as Meaningful Vehicular Access is Provided to the City's Streets When Viewed in Their Entirety | 2 |
|     2. Placement of Temporary Barriers on Certain Streets at Certain Times Does Not Constitute an Alteration of a Facility Requiring an Accommodation | 6 |
|     3. Plaintiffs Have Seemingly Abandoned Their Ancillary Claims Regarding Open Streets | 7 |
|     4. Plaintiffs Have Failed to State a Claim With Respect to Alleged Curb Cut Obstructions | 9 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Cases** **Pages**

Am. Council of the Blind of N.Y. Inc. v. City of N.Y.,
   495 F. Supp. 3d 211 (S.D.N.Y. 2020) ................................................................*passim*

Bronx Indep. Living Servs. v. Metro. Transp. Auth.,
   2021 WL 1177740 (S.D.N.Y. 2021) ................................................................................7

Brown v. County of Nassau,
   736 F. Supp. 2d 602 (E.D.N.Y. 2010) ..............................................................................4

Doe v. Pfrommer,
   148 F.3d 73 (2d Cir. 1998) ...............................................................................................9

Innovative Health Sys. Inc. v. City of White Plains,
   117 F.3d 37 (2d Cir. 1997) ...............................................................................................5

Kinney v. Yerusalim,
   9 F.3d 1067 (3d Cir. 1993) ...........................................................................................5, 7

Lowell v. Lyft, Inc.,
   2022 WL 19406561 (S.D.N.Y. 2022) ..........................................................................9-10

Molloy v. Metro. Transp. Auth.,
   94 F.3d 808 (2d Cir. 1996) ...............................................................................................7

N.J. Prot. & Advocacy, Inc. v. Twp. of Riverside
   2006 WL 2226332 (D.N.J. 2006) ....................................................................................5

Pascuiti v. New York Yankees,
   87 F. Supp. 2d 221 (S.D.N.Y. 1999) ............................................................................3-4

Rodriguez by Rodriguez v. City of N.Y.,
   197 F.3d 611 (2d Cir. 1999) ........................................................................................8-9

Scharff v. County of Nassau,
   2014 WL 2454639 (E.D.N.Y. 2014) ............................................................................4-5

Town & Country Adult Living, Inc. v. Vill./Town of Mt. Kisco,
   2019 WL 1368560 (S.D.N.Y. 2019) ................................................................................6

In re UBS Ag. Sec. Litig.,
   2012 WL 4471265 (S.D.N.Y. 2012) ................................................................................9

**Statutes**

28 C.F.R. § 35.150............................................................................................................3-4

28 C.F.R. § 35.151................................................................................................................7

34 RCNY § 4-21..................................................................................................................10

## PRELIMINARY STATEMENT

Defendant, the city of New York ("City") submits this Reply Memorandum of Law in further support of its motion to dismiss the Amended Complaint.

The City's Motion to Dismiss explains that the City's operation of its streets is a "program, service, or activity," while its individual streets constitute "facilities" under the ADA. Even if it is assumed, as Plaintiffs contend, that vehicular access to the streets is protected by the ADA, the Open Streets program ("Open Streets") does not hinder "meaningful access" to such "service, program, or activity," because only a tiny fraction of streets are included in Open Streets. In any event, because unfettered vehicular access to the City's streets is not protected by the ADA, the placement of temporary barricades on certain streets does not constitute an alteration under the ADA. Moreover, Plaintiffs' ancillary arguments related to alleged obstructed curb-cut access, ambulance accessibility, delivery and ride-share accessibility, and reduced parking, fail to state a claim and/or should be dismissed for lack of standing.

Plaintiffs' Memorandum of Law in Opposition to the City's Motion to Dismiss ("Plaintiffs' Memo") fails to address certain arguments made as part of the Motion to Dismiss, and where it does address the arguments, fails to establish that the City's legal basis for the motion to dismiss is not supported by statute and precedent.

First, Plaintiffs' argument that each individual street constitutes a "program, service, or activity," is based on a misinterpretation and mischaracterization of the 2020 S.D.N.Y. case <u>Am. Council of the Blind</u>. To the contrary, that case, and others, lend support to the City's argument that the "program, service, or activity" is the operation of the streets, to which "meaningful access" is required when "viewed in their entirety."

Second, Plaintiffs fail to set forth any support for their position that the placement of temporary barriers on certain streets at certain times constitutes an alteration of a facility under ADA regulations requiring an accommodation.

Third, Plaintiffs simply decline to meaningfully address the City's argument that the above-referenced ancillary bases for their claims fail to state a cognizable cause of action under the ADA. These arguments are virtually unaddressed by Plaintiffs' Memo, other than in a footnote, where Plaintiffs state that these issues are "problematic." Both on substance and based on Plaintiffs' lack of a response, these claims should be dismissed.

Fourth, Plaintiffs fail to assert an injury-in-fact with respect to their allegations of obstructions to curb cuts. This claim should be dismissed, as obstructing curb cuts is not permitted by the City's rules, there is no evidence that this is a recurring problem, and no Plaintiffs have even asserted an injury.

For these reasons, the Amended Complaint should be dismissed.

**1. Open Streets Does Not Violate the ADA, as Meaningful Vehicular Access is Provided to the City's Streets When Viewed in Their Entirety**

The City argues in its Memorandum of Law in Support of its Motion to Dismiss ("City Memo") that while its operation of the streets—when viewed in their entirety—may be a City "program, service, or activity," each individual street is not a "program, service, or activity" to which meaningful access must be guaranteed. Plaintiffs argue that <u>Am. Council of the Blind</u> should somehow have collateral estoppel effect over the City's argument here, but are incorrect. In fact, that case directly supports the arguments that are set forth by the City.

As an initial matter, the issue of whether streets in the Open Streets program are themselves each a municipal "program, service, or activity" was neither argued, nor adjudicated in <u>Am. Council of the Blind</u>, so collateral estoppel is not relevant here. But in any event, in <u>Am.</u>

Council of the Blind, the court agreed that the question of whether the City had met its obligations to provide "meaningful access" to the City's walkways should be considered from the perspective of whether crossings were accessible to blind and low-vision pedestrians when viewed "in their entirety," not on a crossing-by-crossing basis.

In Am. Council of the Blind, 95% of the relevant crossings were not equipped with Accessible Pedestrian Signals ("APS"), and thus were not accessible to the visually impaired. The court held that the City did not meet the "meaningfully accessible" standard, but perhaps could do so, when more crossings were equipped with APS.[1] The court in fact, specifically held that "under the ADA and Rehabilitation Act, the City is required to ensure that it operates its signalized intersections and the pedestrian grid in a manner that, **'when viewed in [their] entirety,** [are] readily accessible to and usable by individuals with disabilities." Am. Council of the Blind, 495 F. Supp. 3d at 232 (quoting 28 C.F.R. § 35.150(a)). (emphasis added).

Applying the standard set forth in Am. Council of the Blind here, the City can easily establish that the streets are meaningfully accessible to vehicular traffic. In fact, a number of passages from Am. Council of the Blind contemplate that an argument, like the one made here by the City, would be availing:

> Pascuiti…the sole case on which the City relies for its claim that the Court must examine the accessibility to plaintiffs of New York City as a whole, rather than the accessibility of its pedestrian crossings is inapposite. The issue there involved access to Yankee Stadium. The court held that assessing accessibility requires viewing a service, program, or activity—there, the ballpark—"as a whole, not at [its] individual elements." **This aspect of *Pascuiti* might have bearing here were plaintiffs' claim directed to a**

---

[1] The court also noted other cases where a high incidence of inaccessibility led to a finding that such services had been denied to groups of persons with disabilities (e.g. because a third of police stations had pervasive barriers to access; where there were barriers at 80% of polling sites; where less than 2% of City's taxi fleet was wheelchair accessible). Am. Council of the Blind of N.Y. Inc. v. City of N.Y., 495 F. Supp. 3d 211, 233-34 (S.D.N.Y. 2020).

> **particular intersection.** But that is not plaintiffs' focus. Instead, plaintiffs' consistent allegation has been that the City's pedestrian crossing signals are a 'service, program, or activity' of the City, **which must itself be viewed 'as a whole.'** *Pascuiti* is not contrary to that position.

Am. Council of the Blind, 495 F. Supp. 3d at 231, n. 6. (emphasis added).

> **The City's only other argument against liability is to note that the meaningful-access inquiry is not to be made crossing by crossing**—*i.e.*, whether "each individual intersection is equipped with APS"—**but at the level of the overall service or program at issue. On that point, the City is, largely, correct.** The DOJ's implementing regulations provide that the ADA does not "[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a)(1). Id. at 237. (emphasis added).

Far from having an estoppel effect on the arguments made by the City, Am. Council of the Blind directly supports the City's position herein.[2] Plaintiffs' citation to Brown v. County of Nassau, as an alternative position, is not persuasive. In Brown, the Court observed that "individual barriers to access, while not themselves violations under this standard, can cumulatively result in a facility being not readily accessible." Brown v. County of Nassau, 736 F. Supp. 2d 602, 616 (E.D.N.Y. 2010). But there, the County argued that Nassau Coliseum was "readily accessible" despite Plaintiff's expert submitting a report showing over 150 items at Nassau Coliseum that deviated from the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"), ranging from seating, to parking, to concessions, to elevators, etc., which supported the argument that the stadium was not readily accessible when viewed in its entirety. Here, when viewed in their entirety, the City's streets are clearly readily accessible.

---

[2] The other case from this Circuit cited by the City, relies on the same logic as Am. Council of the Blind—the court in Scharff explained: "here, the 'service, program or activity' at issue is, as discussed above, the installation and maintenance of pedestrian crossing signals at crosswalks, and the pedestrian crossing signals, walkways and crossings constitute facilities." Scharff v. County of Nassau, 2014 WL 2454639, *10 (E.D.N.Y. 2014).

The City's arguments, which are consistent with Am. Council of the Blind and Scharff, are not merely "hyper-technical," as Plaintiffs argue, they find their basis in the Third Circuit case Kinney and its progeny, which clarify the responsibilities of municipalities regarding accessibility.

> The Ninth Circuit's conclusion notwithstanding, both the regulations and the Third Circuit explicitly refer to walks and roadways as "facilities," rather than activities, programs, or services…The distinction between a facility and a program, service, or activity is significant, as it dictates the public entity's obligation to ensure accessibility: while entities may not exclude "qualified individual with disabilities from participation in or benefits of services, programs, or activities," the regulations do not "[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities.

N.J. Prot. & Advocacy, Inc. v. Twp. of Riverside, 2006 WL 2226332, *2 (D.N.J. 2006).

Moreover, to the extent Plaintiffs rely on the citation in Am. Council for the Blind to Innovative Health, Plaintiffs' arguments misconstrue the City's position here. In Innovative Health, the City of White Plains argued that zoning was simply exempt from the ADA.[3] Here, the City is not arguing that its operation of the City's streets is exempt from the ADA, instead, as was held in Am. Council of the Blind, the relevant analysis, to the extent that vehicular access to the streets is covered by the ADA, is whether meaningful access to the streets is provided when viewed in their entirety, not on a street-by-street basis.

The City Council enacted Open Streets to benefit and improve pedestrian access, including to individuals with disabilities. Plaintiffs themselves acknowledge that they do not seek to enjoin this program (nor do they assert that they are denied access to the Program's

---

[3] The court in Innovative Health noted that the preamble to the DOJ regulations for the ADA specifically refers to zoning as an example of a public entity's obligation to modify its policies, practices, and procedures, to avoid discrimination. Innovative Health Sys. Inc. v. City of White Plains, 117 F.3d 37, 45 (2d Cir. 1997).

benefits), but instead, they seek relief "requiring Defendants to engage in an interactive dialogue concerning reasonable accommodation of Plaintiffs' disabilities" because the City is "failing to provide any reasonable accommodations for their disabilities." Plaintiffs' Memo, p. 2, N. 2. The ADA does not require the City to make every single street accessible to vehicles in the manner sought by Plaintiffs here (unclear though Plaintiffs' demands may be), and the City's streets, when viewed in their entirety, are clearly reasonably accessible. Nevertheless, the City has made (and will continue to make) a good faith effort to provide the relief sought here. The City promulgated rules and has entered into a contract with the Horticultural Society of New York (the "Hort"), providing for the Hort to manage a program that will address requests for assistance moving barriers on Limited Local Access Open Streets, like those referenced in this litigation. The Amended Complaint does not claim that the accommodation contemplated by the rules is insufficient, nor have Plaintiffs sufficiently pled that the City has failed to make any accommodation under the rules.[4] Given that the ADA does not require the City to make an accommodation, the Amended Complaint should be dismissed.

**2. Placement of Temporary Barriers on Certain Streets at Certain Times Does Not Constitute an Alteration of a Facility Requiring an Accommodation.**

The ADA does not require individual streets to remain accessible for *vehicular* access, and when a street is closed permanently or temporarily, it does not constitute an alteration under the ADA. The City Memo references a number of cases where an alteration was found to violate the ADA. But in those cases, the municipal entity altered a facility where

---

[4] "To state a *prima facie* case for discrimination based on a failure to reasonably accommodate, a plaintiff must demonstrate that: (1) he suffers from a [disability or] handicap as defined by the [statutes]; (2) the defendant knew or reasonably should have known of the plaintiff's [disability or] handicap; (3) accommodation of the [disability or] handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and **(4) defendants refused to make such accommodation.**" E.g. Town & Country Adult Living, Inc. v. Vill./Town of Mt. Kisco, 2019 WL 1368560, *16 (S.D.N.Y. 2019). (emphasis added).

specific rules required certain types of access.[5] That is not the case here. Plaintiffs' Memo fails to point to case law, rules, or regulations, that speak to the issue of vehicular access.

Instead, Plaintiffs reference the 2010 ADA standards generally, without citing to any provision indicating that closing a street would constitute an alteration under the ADA. In fact, Plaintiffs cite, for example, 28 C.F.R. § 35.151(i), applicable to alterations that require curb ramps to be installed when streets are altered, and note that "[n]ew construction and alterations must meet specific design standards depending on the date of construction or alteration." Plaintiffs' Memo, p. 8. But there are no rules or regulations regarding alterations that may limit vehicular street travel. Similarly, Plaintiffs cite cases from the 9th Circuit and its district courts, for the proposition that even temporary obstructions, when placed in a systematic or pervasive manner, may violate the ADA. See Plaintiffs' Memo, pp. 12-13. But these cases relate to sidewalk or curb ramp obstructions. When the City closes a street to vehicular traffic, for road work, a parade, to convert a street into a pedestrian plaza, or as part of Open Streets, it does not constitute an alteration under the ADA.

**3. Plaintiffs Have Seemingly Abandoned Their Ancillary Claims Regarding Open Streets**

The Amended Complaint asserts ADA claims based on perceived or alleged injuries from the placement of temporary barriers at Limited Local Access Open Streets. Specifically, Plaintiffs claim: i) ambulances may be delayed by temporary barriers; ii) car service drivers sometimes will not manually move barriers to pick up individuals who live on such streets; iii) trucks have parked in front of barricades, thus preventing individuals from accessing

---

[5] See e.g. Kinney v. Yerusalim, 9 F.3d 1067, 1071 (3d Cir. 1993) (obligation to install curb ramps at intersections when city streets are resurfaced); Bronx Indep. Living Servs. v. Metro. Transp. Auth., 2021 WL 1177740, *1 (S.D.N.Y. 2021) (alteration of a facility used in the provision of "designated public transportation" services); Molloy v. Metro. Transp. Auth., 94 F.3d 808, 820 (2d Cir. 1996) (alteration of existing train stations).

such streets by vehicle; iv) parking is reduced near Open Streets; v) Plaintiffs have been harassed by City employees (and others) when coming and going into Open Streets locations; vi) that because delivery trucks park at the corner, companies leave heavy packages in the building lobby, rather than at Plaintiff's door; and vii) that restrictions are imposed on vehicular traffic. (see Plaintiffs' Memo, p. 2, n. 1).

The City Memo explained that Plaintiffs' miscellaneous complaints about Open Streets cannot form the basis for an ADA claim. See City Memo, Point III, pps. 19-22.[6] Plaintiffs have neither identified a municipal service or program that they are being deprived access to when a street in front of or near their home is closed on a temporary basis, nor have Plaintiffs explained how they are not receiving evenhanded treatment. See Rodriguez by Rodriguez v. City of N.Y., 197 F.3d 611 (2d Cir. 1999) ("[t]he ADA requires only that a particular service provided to some not be denied to disabled people…Thus, New York cannot have unlawfully discriminated against appellees by denying a benefit that it provides to no one)."

Plaintiffs' Memo fails to grapple with the City's arguments in a meaningful way. First, these arguments are relegated to a footnote, where Plaintiffs claim that these are "problematic" effects of Open Streets. Plaintiffs' Memo, p. 2, N. 1. Second, Plaintiffs claim that this case is "about a group of disabled Plaintiffs that are being denied equal access to the City's public services." Plaintiffs' Opp. p. 1. But they still do not specify what those City public services are (other than their alleged inability to drive in an unfettered manner on the City's streets) or how individuals with disabilities are being treated differently. Plaintiffs' ancillary

---

[6] Also, the City argued that the claims in the Amended Complaint are conclusory and unsupported.

claims should be dismissed for their failure to address the City's arguments,[7] and because they do not assert a cognizable ADA claim. See Id.; Doe v. Pfrommer, 148 F.3d 73, 83 (2d Cir. 1998).

To the extent Plaintiffs' Memo expresses skepticism that the City will enforce its promulgated rules regarding these issues, the rules only took effect on March 29, 2024; the Amended Complaint does not allege that the City has been notified of violations and refused to take action. In any event, even if it is assumed that the temporary barriers hinder the provision of emergency services, delay ride-share vehicles, or prevent vehicular access at times because a truck illegally parks in front of such location, there is no basis to state a claim under the ADA.

### 4. Plaintiffs Have Failed to State a Claim With Respect to Alleged Curb Cut Obstructions

The Amended Complaint claims that "34th Avenue now also contains large planters that obstruct sidewalk curb cuts, making it impossible for someone using a wheelchair to mount the curb" and that barricades "frequently block curb cuts." Am. Compl. ¶¶ 125, 11. But no Plaintiff has alleged that he or she was negatively impacted by any alleged barrier to curb or crosswalk access. The City Memo explains that to establish standing, Plaintiffs must allege past injury, show that it is reasonable to infer that discriminatory treatment will continue, and show it is reasonable to infer that the Plaintiff intends to return to the public accommodation.

Plaintiffs do not assert that any Plaintiff has suffered injury. Instead, they claim the City is not referencing the applicable standard, and quoting Lowell, write that "in the context of the ADA, if a plaintiff knows that accessibility barriers exist, the plaintiff need not establish that he or she would have otherwise actually or imminently visited and/or patronized a place with such barriers." Plaintiffs' Opp., p. 13. But in Lowell, the Court added that this is "because

---

[7] In re UBS Ag. Sec. Litig, 2012 WL 4471265, n. 18 (S.D.N.Y. 2012) ("[i]n any event, in its opposition brief, Lead Plaintiff did not directly address any of the UBS Defendants' arguments regarding DRCM's closing; therefore it has conceded the point by silence").

-9-

the ADA does not require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization…does not intend to comply with its provisions." Lowell v. Lyft, Inc., 2022 WL 19406561, *5 (S.D.N.Y. 2022).

In Lowell, it was determined by the court "that requiring Lowell to download the Lyft app…would amount to a futile gesture, because Lowell sufficiently alleged that she had actual knowledge that it would not be possible to obtain a ride…in areas where Lyft provides users with no ability whatsoever to access…service." Id. The Amended Complaint generally alleges, without even providing specific locations, that planters are being placed so as to obstruct curb cuts. But Plaintiffs have not demonstrated that the City "does not intend to comply with" the provisions of the ADA, and in fact, the rules promulgated by DOT explicitly state that "[s]idewalks, including pedestrian ramps and curb cuts, must be free of obstruction and readily accessible at all times." 34 RCNY 4-21(c)(9)(iv). Plaintiffs demur that "the City has made it very clear that it is unwilling to actually follow any of the applicable rules" and that "[t]he City routinely fails to enforce even its own regulations." Plaintiffs' Memo, p. 15. These ad hominem attacks though do not establish that the City intends to ignore its own requirement that curb cuts along Open Streets be free from obstructions. Plaintiffs do not allege that the City has been made aware of issues related to obstructions and failed to take action or that this is an ongoing problem at a specific location. No Plaintiff has alleged they have been affected by curb-cut or sidewalk obstructions caused by Open Streets and any such claim should be dismissed.

## CONCLUSION

For the above reasons, as well as those explained in the City Memo, the Court should grant City defendant's motion and dismiss the Amended Complaint in its entirety.

Dated:      New York, NY
            April 12, 2024

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New York
Attorney for City defendant
100 Church Street
New York, NY 10007

<u>           /s/                    </u>
Adam M. Moss
Senior Counsel
(212) 356-4017
amoss@law.nyc.gov

Michelle Goldberg-Cahn,
Sherrill Kurland, of counsel