**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JESS CHARLES, KRYSTYNA CHUDA, ROSLYN
HUEBENER, MILL JONAKAIT, CARMEN
KOLODICH, RICHARD KOLODICH, MARY
MCGUCKIN, DEBORAH PERRIN, JOHN DAVID
TINEO, KRYSTYNA ZABLOCKI, and
TADEUSZE ZABLOCKI,

                      Plaintiffs,

      v.

THE CITY OF NEW YORK, NORTH BROOKLYN
PARKS ALLIANCE, NORTH BROOKLYN OPEN
STREETS COMMUNITY COALITION, NORTH
BROOKLYN MUTUAL AID, 34TH AVENUE
OPEN STREETS COALITION, NOEL
HILDALGO, KEVIN LACHERRA, JEFFREY
HODSON, NUALA O'DOHERTY-NARANJO,
AND JIM BURKE,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No.: 23-cv-03108-EK-CLP

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO VOLUNTEER DEFENDANTS' MOTION TO DISMISS

**VALLI KANE & VAGNINI LLP**

Matthew L. Berman
mberman@vkvlawyers.com
600 Old Country Road
Garden City, New York 11530
Tel: (516) 203-7180
Fax: (516) 706-0248
*Attorneys for Plaintiffs*

# Table of Contents

Preliminary Statement.................................................................................................... 1

Legal Argument ............................................................................................................. 3

I.    Legal Standard Applicable to a Motion to Dismiss ............................................... 5

II.   Analysis of Plaintiffs' Claims .............................................................................. 6

   A   Elements of Plaintiff's ADA Title II and Rehabilitation Act Claims ................. 7

   B   Elements of Plaintiff's § 1983 Claim................................................................ 8

      1   Plaintiffs May Use § 1983 as a vehicle to assert Title III claims under the ADA.......... 8

      2   Volunteer Defendants are Subject to Title III of the ADA .............................. 8

III.  Plaintiffs Plausibly Pleaded their ADA, Rehabilitation Act and §1983 Claims................. 9

   A   Volunteer Defendants are Public Entities under Title II and the Rehabilitation Act.......... 9

   B   Volunteer Defendants Cannot Deny Plaintiffs from using public "Facilities"................. 11

   C   Volunteer Defendants are Required to Maintain the Accessibility of "Services, Programs, or Activities"................................................................................................. 13

   D   Streets, Sidewalks and Curb-cuts are both "Facilities" and "Services, Programs, or Activities" that the City Must Make and Keep Accessible to the Disabled ............................. 13

IV.   Defendants Received Federal Funds within the meaning of the Rehabilitation Act ........ 14

Conclusion ................................................................................................................... 18

# Table of Authorities

## Cases

*American Council of the Blind of New York, Inc. v. City of New York,* 495 F. Supp.3d 211, 230-231 (S.D.N.Y. 2020) ............................................................................................... 14

*Barden v. City of Sacramento,* 292 F.3d 1073, 1076 (9th Cir. 2002) ............................................ 13

*Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) ............................................................................. 5

*Davis v. Shah*, 821 F.3d 261, 272 (2d Cir. 2003) ........................................................................... 7

*Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196 (2d Cir. 2014) ..... 7

*Frame v. City of Arlington,* 657 F.3d 215, 226 (5th Cir. 2011) ..................................................... 13

*Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) ............................................ 16

*Green v. City of New York,* 465 F.3d 65, 78-79 (2d Cir. 2006) ...................................................... 9

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ........................................................................... 17

*Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003) ...................................................... 7

*Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) ................................................................. 6

*NCAA v. Smith*, 525 U.S. 459 (1999) ........................................................................................... 15

*Nielson v. Rabin,* 746 F.3d 58, 62 (2d Cir. 2014) .......................................................................... 6

*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) .............................................. 13

*Roberts v. Royal Atlantic Corp.,* 542 F.3d 363, 368 (2d Cir. 2008) ............................................ 16

*Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) ............................................................. 5

*Williams v. City of New York*, 121 F. Supp.3d 354, 370 n. 19 (S.D.N.Y. 2015) ........................... 8

## Statutes

29 U.S.C. § 504(b) - (b)(3)(A)(ii) ................................................................................................ 17

29 U.S.C. § 794(b) ....................................................................................................................... 13

42 U.S.C. § 12101(a)(3) .............................................................................................................. 12

42 U.S.C. § 12131(1) .................................................................................................................... 9

42 U.S.C. § 12132 ................................................................................................................... 9, 11

42 U.S.C. § 12182(a) .................................................................................................................... 8

42 U.S.C. § 12201(a) .................................................................................................................. 13

## Other Authorities

*010 ADA Standards for Accessible Design* (Sept 15, 2010) ........................................................ 12

House Report No. 101-485, 1990 U.S.C.C.A.N ........................................................................... 12

## Regulations

28 C.F.R. § 35.133(a) .................................................................................................................. 12

28 C.F.R. § 35.149 ....................................................................................................................... 11

28 C.F.R. § 35.150 ....................................................................................................................... 11

28 C.F.R. § 35.151 ....................................................................................................................... 11

28 C.F.R. § 35.151(a) .................................................................................................................. 12

28 C.F.R. § 35.151(i) ................................................................................................................... 13

28 C.F.R. §§ 35.133(a) .................................................................................................................. 9

28 C.F.R. §§ 35.149-52 ................................................................................................................ 11

28 C.F.R. Part 35, Subpart B ....................................................................................................... 11

Plaintiffs, through their undersigned counsel, submit this memorandum of law in opposition to the motion to dismiss (the "Motion") the amended complaint (the "Complaint," ECF Dkt 68, cited below as "Compl.") pursuant to Fed. R. Civ. P. Rules 12(b)(1) and 12(b)(6) and the related memorandum of law ("Def. Mem.") filed by defendants North Brooklyn Parks Alliance, North Brooklyn Open Streets Community Coalition, North Brooklyn Mutual Aid, 34th Avenue Open Streets Coalition, Noel Hidalgo, Kevin Lacherra, Nuala O'Doherty-Naranjo, Jeffrey Hodsdon and Jim Burke (collectively, the "Volunteer Defendants").

## Preliminary Statement

This case is about a group of disabled Plaintiffs (Compl. ¶¶ 22 – 32) that are being denied equal access to the City's public services through the City's implementation of the Open Streets program.  As set forth in the Complaint, the City implemented its misnamed Open Streets program (the "Program") in order to close certain streets, sidewalks and curb-cuts (collectively, the "Open Streets") in order to reserve their use for pedestrians and cyclists.  *Id*. at ¶¶ 3-5,  While the Program generally precludes vehicular traffic by blocking off the Open Streets using metal police stanchions, concrete blocks and planters (*id*. at ¶ 3), the City still allows local vehicular through-traffic to drive and park on the Open Streets.  *Id*. at ¶ 40 ("local traffic is exempt from the Program's restriction on through-traffic.")  The problem is that while able-bodied pedestrians and local drivers are able to move through or around these obstacles to access the Open Streets (*id*. at ¶ 43), the disabled Plaintiffs are unable to do the same.  *Id*. at ¶¶ 47 - 49 (Jess Charles), 50 - 53 (Krystyna Chuda), 54 – 56 (Roslyn Huber), 57 – 59 (Mill Jonakait), 60 – 65 (Carmen Kolodich), 66 – 68 (Richad Kolodich), 69 – 72 (Mary McGuckin), 73 – 76 (Deborah Perrin), 77 – 80 (John David Tineo), 81 – 83 (Krystyna Zablocki), 84 – 86 (Tadeusz Zablocki).

The gravamen of the Complaint is that the Program, as implemented, denies the disabled access to Open Streets that the able-bodied are able to use by sidestepping or bypassing the

City's barriers.[1]  This turns Plaintiffs into shut-ins who cannot engage in their daily life activities with dignity.  *Id*. at ¶ 1.  This problem is worsened by the fact that the City and its volunteer "partners" who manage the Program are unavailable or unwilling to accommodate the disabled by moving the barricades out of the way to make the Open Streets accessible.  *Id*. at ¶¶ 110 - 120.  The City's plan to expand the program to eventually include more than 100 miles of public roadways and 20 miles of public bus lanes will further restrict Plaintiffs' freedom to live independently.  *Id*. at ¶ 1.

Contrary to the Volunteer Defendants' contention (Def. Mem. at 4-8), Plaintiffs do not assert that the City cannot have an Open Streets program at all, or cannot generally restrict public access to streets, parking spots, or other services, or change their character by turning them into parks or spaces exclusively available to pedestrians or cyclists.  Plaintiffs seek injunctive relief compelling Volunteer Defendants to make reasonable accommodations for Plaintiffs' disabilities, not necessarily to enjoin the entire program, as Volunteer Defendants contend. [2]

Plaintiffs allege that the City's volunteer partners violate federal and state law by using barriers to deny access to Open Streets *only* to the disabled (because everyone else can move the

---

[1] The Program is also problematic for a number of additional reasons, including the continuous, daily restriction it imposes upon vehicular traffic (*id*. at ¶ 4), the related harassment of local Access-A-Ride, Uber, Lyft and delivery drivers that the disabled rely upon (*id*. at ¶¶ 5, 34) and who are typically prohibited from leaving their vehicles to move barricades in order to serve disabled passengers (*id*. at ¶¶ 64, 75, 95, 117-19), the violation of the New York City Fire Code (*id*. at ¶109) and the obstruction of ambulances and other emergency services (*id*. at ¶¶ 15, 16, 34, 53, 63, 80, 87, 95, 109, 119, 124, 127).

[2] While the Volunteer Defendants claim that Plaintiffs seek an order "enjoining the Open Streets program" in its entirety (Def. Mem. at 1), that is not correct.  Instead, Plaintiff's prayer for relief seeks three things: (a) "An order granting Plaintiffs appropriate injunctive and declaratory relief enjoining the Open Streets Program"; (b) "An order granting Plaintiffs reasonable attorneys' fees and expenses and other compensable costs and expenses"; and (c) "An order granting Plaintiffs such other, further and different relief as the nature of the case may require or as may determined to be just, equitable and proper by this Court."  Compl. at pp. 55 of 55.  Accordingly, the Complaint contemplates injunctive and declaratory relief requiring, for example, defendants to provide reasonable accommodations for Plaintiffs' disabilities.

barriers or bypass them) and by failing to provide any reasonable accommodations for their disabilities.  Compl. at ¶¶ 145 – 159; *id.* at "Prayer for Relief."

Plaintiffs also assert that the Volunteer Defendants violate federal, state and municipal law when they obstruct Open Streets with barricades, and refuse to accommodate Plaintiffs' disabilities by moving the barricades out of Plaintiffs' way, while able-bodied people easily access the Open Streets without any impediment.

Volunteer Defendants trivialize and belittle Plaintiffs by arguing that the Complaint was filed because the Program "hinders Plaintiffs' ability to park their cars."  Def. Mem. at 1.  While it is true that Plaintiffs' lives are negatively impacted by aspects of the Open Streets program and that the Program completely impedes Plaintiffs' ability to live their lives independently with dignity, this case isn't about Plaintiffs' desire for some unique right of access to City Streets, or to parking.

Instead, in this case, Plaintiffs seek to have *equal access* to City Streets that are available to all other New Yorkers, without being uniquely obstructed by barriers because of their disabilities.  So, for instance, if there is a public parking space on an Open Street that able-bodied members of the public can use, Plaintiffs should also be able to use it too, and should not be denied access due to intervening barriers Volunteer Defendants placed in the way and refused to remove.  Volunteer Defendants, if they are to place such barriers, must provide reasonable accommodation to Plaintiffs so that they, too, can avail themselves of these public resources even though they are disabled.

## <u>Legal Argument</u>

The Complaint asserts claims against Volunteer Defendants under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"), the Rehabilitation Act of 1973,

29 U.S.C. § 701 *et seq.* (the "Rehabilitation Act"), the New York State Human Rights Law

("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Compl. ¶¶ 145 – 159.

The Motion seeks to dismiss the Complaint for lack of subject-matter jurisdiction (under

Fed. R. Civ. P. Rule 12(b)(1)) and for failure to state a claim (under Fed. R. Civ. P. Rule

12(b)(6)).

In support of dismissal, the Volunteer Defendants make five arguments, summarized as

follows:

(1) the law doesn't require the provision of parking spaces or prohibits the restriction of

streets to pedestrians and cyclists (Def. Mem., Point I, at 4-8);

(2) the Volunteer Defendants are not proper parties under ADA Title II (*id.*, Point II,

at 9);

(3) Plaintiffs' conclusory allegations that Volunteer Defendants receive federal funds are

insufficient to state a claim under the Rehabilitation Act, which also prohibits

"individual capacity" lawsuits) (*id.,* Point III, at 10-13);

(4) Section 1983 claims cannot be used to salvage defective ADA and Rehabilitation Act

claims (*id.*, Point IV, at 14); and

(5) The Court should decline supplemental jurisdiction over Plaintiffs' claims arising

under state and city law (*id.*, Point V, at 14-18).

Point I is irrelevant, because Plaintiffs do not contend that they have any unique right to

particular parking spaces or to vehicular access on Open Streets.  Instead, they are entitled to

*equal access* to the same Open Streets that the able-bodied have access to, and to which disabled

people are denied due to the Volunteer Defendants' placement of the obstructions described in

the Complaint.  Compl. at ¶ 3.

Point II fails because either: (a) the Volunteer Defendants are "instrumentalities" of the state and each is thus a "Public Entity" subject to ADA Title II; or, in the alternative the Volunteer Defendants are private parties subject to 42 U.S.C. § 1983 and Title III of the ADA because they have denied Plaintiffs access to "public accommodations."

Point III is incorrect as a matter of law.  Plaintiffs' allegations, including that the Volunteer Defendants receive federal funds, sufficiently plead violations of the Rehabilitation Act and it is well-settled that individual defendants can be sued for injunctive relief under the Rehabilitation Act.

Point IV is incorrect because Plaintiffs may use Section 1983 as a vehicle to assert claims under Title III of the ADA.

And if the Court agrees with Plaintiffs on any of these five points, then it should also reject Point V of the Volunteer Defendants' argument and exercise supplemental jurisdiction over Plaintiffs' claims under state and City law.[3]

## I.   <u>Legal Standard Applicable to a Motion to Dismiss</u>

On a motion to dismiss pursuant to Rule 12(b)(6), the district court's task is to assess the pleadings to determine whether they contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).  "A complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' "  *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[3] The Volunteer Defendants assert that Plaintiffs' claims under the NYSHRL and NYCHRL fail for the same reasons they supposedly fail under the ADA and the Rehabilitation Act.  Def. Mem., at 16.  Accordingly, Plaintiffs need not separately address the sufficiency of the Complaint's pleading of their NYSHRL and NYCHRL claims beyond responding to Volunteer Defendants' arguments concerning the ADA and Rehabilitation Act.

alleged.' " *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).  In deciding a motion to dismiss, the "Court accepts as true the pleadings' factual allegations and draws all reasonable inferences in the non-movant's favor."  *Nielson v. Rabin,* 746 F.3d 58, 62 (2d Cir. 2014).

Plaintiffs' allegations here, taken as true, are sufficient to state claims for liability under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (the "Rehabilitation Act"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Accordingly, Volunteer Defendants' Motion should be denied in its entirety.

## II.    <u>Analysis of Plaintiffs' Claims</u>

Plaintiffs' Complaint asserts three Causes of Action against Volunteer Defendants under federal law:

1.  Violation of Title II of the ADA, 42 U.S.C. § 12132 (failure to accommodate);

2.  Violation of the Rehabilitation Act, 29 U.S.C. § 29 U.S.C. § 794 *et seq*. (failure to accommodate); and

3.  Violation of 42 U.S.C. § 1983 (failure to accommodate).

Compl. ¶¶ 145 – 155.

Plaintiffs' First and Second Causes of Action allege that the Volunteer Defendants have violated both Title II of the ADA and the Rehabilitation Act due to their failure to accommodate Plaintiffs' disabilities and to provide them with equal access to Open Streets or reasonable accommodations for Plaintiffs' disabilities.  *Id.* ¶¶ 3, 40, 43, 47-86, 145 – 152.

Plaintiffs' third Cause of Action asserts a claim under 42 U.S.C. § 1983 for violating their rights under federal law including, without limitation, the ADA and the Rehabilitation Act.  Compl. ¶¶ 153-155.

6

A        Elements of Plaintiff's ADA Title II and Rehabilitation Act Claims

The elements of a claim under Title II of the ADA and under Section 504 of the

Rehabilitation Act are the same.  *Disabled in Action v. Bd. of Elections in City of New York*, 752

F.3d 189, 196 (2d Cir. 2014).  "To establish a violation under Section 504 or Title II, a plaintiff

must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is

subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from

the defendant's services, programs, or activities, or was otherwise discriminated against by the

defendant because of his disability."  *Id.* (internal quotation omitted); *see also Henrietta D. v.*

*Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003) (for purposes of Rehabilitation Act, to establish

that a defendant is subject to the Act, plaintiffs must establish that the defendant is a recipient of

federal funds).  A plaintiff may base a discrimination claim under Title II or under Section 504

"on one of three theories of liability: disparate treatment, disparate impact, or failure to make a

reasonable accommodation."  *Davis v. Shah*, 821 F.3d 261, 272 (2d Cir. 2003). Here, Plaintiffs

allege that Volunteer Defendants discriminated against Plaintiffs by obstructing their access to

Open Streets and failing to accommodate Plaintiffs by removing the obstructions. Compl. ¶¶ 3,

110-120.

In seeking to dismiss Plaintiffs claims, Volunteer Defendants argue that Plaintiffs have

failed to properly plead the second and third elements of these claims: that Volunteer Defendants

are "public entities" under ADA Title II and the Rehabilitation Act; and that Plaintiffs were not

entitled to any reasonable accommodations because they supposedly had no rights to parking or

vehicular access on Open Streets.  Def. Mem. at 4-14.

As set forth below, Plaintiffs have sufficiently plead: (1) that each Volunteer Defendant is

a "Public Entity" under Title II of the ADA (or, in the alternative, as set forth in Section II(B),

below, that the Volunteer Defendants are private parties subject to Title III of the ADA because

they have denied Plaintiffs access to "public accommodations"); (2) that they were deprived of protected accessibility rights under the ADA or Rehabilitation Act; and (3) that Defendants received federal funds within the meaning of the Rehabilitation Act.

       B       Elements of Plaintiff's § 1983 Claim

Plaintiffs are afforded a private right of action under 42 U.S.C. § 1983 to assert violations of the ADA, including Title III thereof, which adopts the remedial scheme of Title II of the Civil Rights Act of 1964. *Williams v. City of New York*, 121 F. Supp.3d 354, 370 n. 19 (S.D.N.Y. 2015) (citing 42 U.S.C. § 12188(a)). [4]

       1       Plaintiffs May Use § 1983 as a vehicle to assert Title III claims under the ADA

In order to state a claim for violation of Title III, which authorizes private actions only for injunctive relief and not monetary damages, a plaintiff must "establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atlantic Corp.,* 542 F.3d 363, 368 (2d Cir. 2008) *cert denied* 556 U.S. 1104 (2009); *see also Camarillo v. Carrols Corp.,* 518 F.3d 153, 156 (2d Cir. 2008). Only the second and third elements are at issue here.

       2       Volunteer Defendants are Subject to Title III of the ADA

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of **public accommodation** by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a)

---

[4] Plaintiffs do not contend that they have a private right of action under 42 U.S.C. § 1983 to assert violations of the Rehabilitation Act.

(emphasis added).  "Public accommodation," in turn, includes any "park … or other place of recreation" and Volunteer Defendants do not appear to dispute that Open Streets are places of recreation included within that definition.

### III.     Plaintiffs Plausibly Pleaded their ADA, Rehabilitation Act and §1983 Claims.

A "public entity" must comply with both the ADA and the Rehabilitation Act or that it receives federal funds as the Complaint alleges (Compl. ¶¶ 101, 151).  *See generally*, Def. Mem; *see also* 42 U.S.C. § 12132 (ADA applies to public entities); 28 C.F.R. §§ 35.133(a) (a "public entity shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities"); 28 C.F.R. §§ 35.149-52 (applying non-discrimination principles in the context of access to government programs).

A          Volunteer Defendants are Public Entities under Title II and the Rehabilitation Act

Title II of the ADA states: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The statute defines "public entity" to include "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority...." 42 U.S.C. § 12131(1).  Plaintiffs contend that Volunteer Defendants are public entities because they are "instrumentalities" of New York City.

In *Green v. City of New York,* 465 F.3d 65, 78-79 (2d Cir. 2006), the court considered the meaning of the term "instrumentality," holding that the term refers to "a creature of a state or municipality."  Applying that definition, *Green* found that a private hospital contracting with the City at arms' length was not such a creature, although it was alleged to have carried out a public

function pursuant to a contract with the City, under the City's rules and under the supervision of City employees.  *Id*. at 78 – 79.

Here, the Complaint alleges an even closer relationship between the Volunteer Defendants and the City than that alleged in *Green*, because the Complaint alleges that the City has delegated and transferred its governmental power to administer the Open Streets to the Volunteer Defendants.  So, for example, the Complaint alleges that defendant North Brooklyn Parks Alliance ("NBK Parks") works with the New York City Department of Parks & Recreation, NYC Department of Transportation ("DOT"), and elected officials to maintain, activate, enhance, and expand local parks and to administer a 1.1 mile stretch of Berry Street, which was designated as an Open Street pursuant to the Program.  Compl. ¶ 34.  The Complaint alleges that NBK Parks signed a management agreement with DOT to manage Berry Street under the program, to coordinate with other community organizations to manage their respective Open Streets, and to provide guidance for managing those streets to DOT.  *Id*.  NBK Parks exercised the City's own inherent power to manage the streets by deciding to encourage Open Streets closures of 6 hours or longer, to provide only limited vehicular access to Open Streets, to place, move, and remove barriers to regulate the flow of emergency vehicles, essential deliveries, and Access-A-Ride vehicles, and to design how the Program would be managed on a day-to-day basis.  *Id*.  Plaintiff makes similar allegations concerning each of the other Volunteer Defendants. *Id*. at ¶¶ 35 – 44.  Plaintiff contends that Volunteer Defendants' conduct in directly exercising municipal power over the Streets distinguishes this case from *Green*, and that Volunteer Defendants are thus "public entities" within the meaning of the ADA.

But even if this Court were to find that the Volunteers Defendants are private entities rather than public entities, the distinction would be insignificant under the facts of this case,

because any finding that Volunteer Defendants are private entities just means that Plaintiffs are entitled to relief under their § 1983 claim (discussed *supra*) due to Volunteer Defendants' violations of Title III of the ADA.

      B      <u>Volunteer Defendants Cannot Deny Plaintiffs from using public "Facilities"</u>

Title II of the ADA states: "[N[o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The ADA directs the United States Department of Justice to promulgate regulations implementing Title II.  42 U.S.C. § 12134(a); *see also* 28 C.F.R. Part 35 (Title II implementing regulations).

Subpart D of the regulations (titled "Program Accessibility") – applies non-discrimination principles in the context of access to government programs.  *See* 28 C.F.R. §§ 35.149-52.  Subpart D also begins with a broad proscription: "[N]o qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.149.  The next two sections set out the program accessibility standards applicable to "existing facilities" (28 C.F.R. § 35.150) and "new construction and alterations" (28 C.F.R. § 35.151).

Subpart B of the regulations (titled "General Requirements") includes provisions explaining a public entity's duty to ensure that its accessible facilities remain accessible through ongoing maintenance.  28 C.F.R. Part 35, Subpart B.  While Subpart B "does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs", it does provide that "[a] public entity shall maintain in operable working condition those features of

facilities and equipment that are required to be readily accessible to and usable by persons with disabilities."  28 C.F.R. § 35.133(a).

The text and history of the ADA and its regulations emphasizes the necessity of eliminating disability discrimination in the provision of public services.  *See, e.g.*, 42 U.S.C. § 12101(a)(3) "[D]iscrimination against individuals with disabilities persist in such critical areas as … **transportation** … and access to public services.")(emphasis added); 42 U.S.C. § 12101(a)(5) ("[I]ndividuals with disabilities continually encounter various forms of discrimination, including … the discriminatory effects of architectural, **transportation**, and communication barriers.") (emphasis added); 28 C.F.R. § 35.151(i)(ii) ("Newly constructed or altered street level pedestrian walkways must contain curb ramps ….").  The House Report accompanying the ADA explains: "[t]he employment, **transportation**, and public accommodations section of **this Act would be meaningless if people [with disabilities] were not afforded the opportunity to travel on and between the streets**."  House Report No. 101-485, 1990 U.S.C.C.A.N. at 367(emphasis added).

Newly constructed or altered sidewalks are subject to the even higher standards of 28 C.F.R. § 35.151(a).  This regulation requires that each facility must be "designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities." *Id*.  The regulations implementing the ADA require that each facility altered by a public entity in a manner that affects the usability of the facility must be accessible "to the maximum extent feasible."  *Id*. at § 35.151(b)(1).  New construction and alterations must meet specific design standards depending on the date of construction or alteration.  *Id*. at § 13.151(c); *see also 2010 ADA Standards for Accessible Design* (Sept 15, 2010).[5]  Newly constructed or altered streets and roads must contain curb ramps or other sloped

---

[5] Available at https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards_prt.pdf (last visited March 22, 2024)

areas at any intersection having curbs or other barriers to entry from a street level pedestrian walkway.  28 C.F.R. § 35.151(i).

C    <u>Volunteer Defendants are Required to Maintain the Accessibility of "Services, Programs, or Activities"</u>

Volunteer Defendants' maintenance of pedestrian paths (sidewalks and curb-cuts) also constitutes a "service, program or activity" under Title II of the ADA.  The Supreme Court has already recognized that the ADA's statutory terms are unambiguously broad.  *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998).  Section 504 of the Rehabilitation Act specifically defines the term "program or activity" as "*all of the operations of*" a covered public entity, 29 U.S.C. § 794(b) (emphasis added), and Congress required Title II to be interpreted at least as broadly as Section 504, see 42 U.S.C. § 12201(a).

Courts have thus routinely concluded that sidewalks are "services, programs, or activities" under the ADA.  *See Frame v. City of Arlington*, 657 F.3d 215, 226 (5th Cir. 2011) (en banc) ("Building and altering city sidewalks unambiguously are 'services' of a public entity under any reasonable understanding of that term."); *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) ("[M]aintaining public sidewalks is a normal function of a city" such that "[m]aintaining their accessibility for individuals with disabilities therefore falls within the scope of Title II.").

D    <u>Streets, Sidewalks and Curb-cuts are both "Facilities" and "Services, Programs, or Activities" that the City Must Make and Keep Accessible to the Disabled</u>

In *American Council of the Blind of New York, Inc. v. City of New York,* an organization supporting people with vision disabilities brought a class action against the City due to the City's failure to provide non-visual crossing information at a vast majority of its intersections that utilize traffic signals, and the City's failure to accommodate pedestrians with vision disabilities. *See American Council of the Blind of New York, Inc. v. City of New York,* 495 F. Supp.3d 211,

230-231 (S.D.N.Y. 2020).  The Court granted summary judgment, in part, in favor of plaintiffs on their claims under both the ADA and the Rehabilitation Act.  In doing so, the Court remarked that the Second Circuit has counseled against "hairsplitting arguments" concerning which "aspects of a city's operations fall under the ADA's broad protections.  Instead, it has instructed that any normal function of a governmental entity is properly treated to be a service, program or activity under the ADA and Rehabilitation Act."  *Id*. at 230 (cleaned up), citing *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (holding that Title II covers "anything a public entity does," and collecting circuit cases holding similarly).

*Council for the Blind* ultimately concluded that the City's maintenance of signalized intersections and the pedestrian grid plainly constitute a "service, program or activity" of a public entity because those are normal functions of the City, and that the City and its Department of Transportation "have broad authority for the City's streets and oversee, among other things, the installation, repair, and maintenance of New York City traffic signals, sidewalks, crosswalks, bicycle lanes, and roadways." *Council for the Blind, supra*, at 231.  So too here.  The City and its Department of Transportation still have broad authority over the City's streets and still oversee the installation, repair and maintenance of the City's sidewalks, crosswalks, bicycle lanes and roads.  The Volunteer Defendants do not contend otherwise.  Accordingly, the Volunteer Defendants are obligated to accommodate Plaintiffs by maintaining the accessibility of the Open Streets that Volunteer Defendants manage.

**IV.**   **Defendants Received Federal Funds within the meaning of the Rehabilitation Act**

As discussed in *supra*, Plaintiffs' Rehabilitation Act claim relies upon Volunteer Defendants' receipt of public funds.  Plaintiffs' Complaint alleges that the Volunteer Defendants did receive federal funds.  Compl. ¶¶ 101, 151.  Volunteer Defendants contend that Plaintiffs'

allegations are merely conclusory, and fall short of the standard for plausibly pleading Rehabilitation Act claims.  Def. Mem. at 10-14.  Defendants are wrong.

Volunteer defendants argue that the law distinguishes between those who actually receive federal funds and those who receive merely economic benefits from federal financial assistance or who have previously received subsidies.  *Id*. at 11

But the Complaint alleges that Volunteer Defendants actually received federal funds, not that Volunteer Defendants received some other economic benefit or prior subsidy.  Paragraph 101 of the Complaint alleges, on information and belief, that the City of New York received federal funds that it used for the implementation of the Program as part of the City's "Vision Zero" initiative.  Paragraphs 34 – 42 allege, in turn, that each of the Volunteer Defendants received those federal funds through grants from New York City's Department of Transportation.  Plaintiffs have thus plausibly alleged that each of the Volunteer Defendants received federal funds, as opposed to some other economic benefit or prior subsidy.

Volunteer Defendants' citation to *NCAA v. Smith*, 525 U.S. 459 (1999) in inapposite (*see* Def. Mem. at 12), because *NCAA* teaches that the federal funding is "received" without distinguishing "between direct institutional assistance" and aid "earmarked" for the recipient that is transmitted through an intermediary.  *Id*. at 466-67 (receipt "encompass[es] *all* forms of federal aid … direct or indirect.") (quoting *Grove City College v. Bell*, 465 U.S. 555, 563-570 (1984).

Here, there is ample evidence that Volunteer Defendants actually received federal funds as Plaintiffs have alleged.  The NYC Comptroller's checkbook is transparent and accessible online at https://www.checkbooknyc.com/.  The Comptroller's checkbook database reveals

"Spending" transactions listed for the expense category of "Contractual Services General" for many of the Volunteer Defendants, including, for example:

1.  Open Space Alliance of North Brooklyn (North Brooklyn Parks Alliance)
    For "Contractual Services General"
    December 12, 2022 [6]

2.  Together We Can Community Resource (34th Ave Open Streets Community  Coalition)
    For "Contractual Services General"
    February 10, 2023 [7]

3.  The Horticulture Society
    For "Contractual Services General"
    July 1, 2023 [8]

Additionally, the New York City Recovery Plan for State and Local Fiscal Recovery Funds indicates that more than $43 million of federal funding from the American Rescue Plan Act were spent by the City, including on the Open Streets Program. [9]  And the Court may take judicial notice of these materials.  *See, e.g., Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) ("although these documents are not mentioned on the face of the complaint, we have previously held that on a Rule 12(b)(6) motion to dismiss a court may consider matters of which judicial notice may be taken") (internal citation omitted).

Volunteer Defendants' final assertion, that "individual capacity" suits are prohibited under the federal law governing Plaintiffs' claims (Def. Mem. at 10-12), is inapplicable here. Plaintiffs are not suing any government officials in their individual capacity.  Plaintiffs allege

---

[6] https://www.checkbooknyc.com/smart_search/citywide?search_term=*!*vendor_name=open%2Bspace%2Balliance%2Bfor%2Bnorth%2Bbrooklyn

[7] https://www.checkbooknyc.com/smart_search/citywide?search_term=*!*vendor_name=together%2Bwe%2Bcan%2Bcommunity%2Bresource%2Bcenter%2Binc

[8] https://www.checkbooknyc.com/smart_search/citywide?search_term=%2A%21%2Avendor_name%3Dthe%2Bhorticultural%2Bsociety%2Bof%2Bnew%2Byork&page=6

[9] Available at: https://home.treasury.gov/system/files/136/New-York-City-2021-Recovery-Plan-SLT-0686.pdf (at pages 18-19)

that Volunteer Defendants associations have violated section 504 of the Rehabilitation Act because they have discriminated against Plaintiffs in a "Program or Activity" which includes "all of the operations of … an entire corporation, partnership, private organization, or an entire sole proprietorship… which is principally in the business of providing … social services, or parks and recreation…." 29 U.S.C. § 504(b) - (b)(3)(A)(ii).[10]  Plaintiffs may name individual Volunteer Defendants in connection with their attempt to secure prospective injunctive relief:

> In other words, we concluded that Title II and Rehabilitation Act suits for prospective injunctive relief may, under the doctrine established by Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), proceed against individual officers in their official capacity, see Henrietta D., 331 F.3d at 289 ("[T]here is no basis for holding that the ADA or Rehabilitation Act intended to create the kind of comprehensive enforcement scheme that would preclude prospective injunctive relief against a state official in her official capacity."). Insofar as the amended complaint seeks prospective injunctive relief, then, it may be asserted against the individual defendants here in their official capacities.[4]

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

For these reasons, Plaintiffs have more than plausibly alleged that Volunteer Defendants have received federal funds sufficient to satisfy the requirements of the Rehabilitation Act.

---

[10] CPLR § 1025 and New York General Association Law §13 also provide that any unincorporated association (like Volunteer Defendants here) may be sued by individually naming as a defendant the association's President or Treasurer.

## Conclusion

Plaintiffs have adequately pled their ADA, Rehabilitation Act and § 1983 claims and the

Volunteer Defendants' Motion should thus be denied.


Dated:  Garden City, New York
        March 22, 2024

                                        **VALLI KANE & VAGNINI LLP**


                                        By: _/s/ Matthew L. Berman_

                                        Matthew L. Berman, Esq.
                                        MBerman@vkvlawyers.com
                                        600 Old Country Road
                                        Garden City, New York 11530
                                        Tel: (516) 203-7180
                                        Fax: (516) 706-0248

                                        _Attorneys for Plaintiffs_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 22, 2024 a true and correct copy of Plaintiffs'

Memorandum of Law in opposition to Volunteer Defendants' Motion to Dismiss was served via

electronic email on all counsel of record.

Dated: March 22, 2024
Garden City, New York

<u>/s/ Matthew L. Berman</u>
Matthew L. Berman, Esq.