UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

 JESS CHARLES et al.,

                        Plaintiffs,          **MEMORANDUM & ORDER**
                                             23-CV-3108 (EK)(PCG)
            -against-

 CITY OF NEW YORK et al.,

                        Defendants.

--------------------------------------x
ERIC KOMITEE, United States District Judge:

        Since April 2020, the City of New York has operated
the "Open Streets Program," which seeks to open streets to
pedestrians by closing them to cars and trucks.  Some streets in
the program remain open to *local* vehicular traffic — for
example, to drivers who live on the street in question — while
others are closed in their entirety.  The City works with
community organizations to implement the program in certain
neighborhoods.

        Plaintiffs are disabled individuals who live on or
near affected streets open to local traffic.  They claim that
they are prevented from accessing these streets because, among
other things, the program deploys barriers to block off streets,
and the plaintiffs cannot move them due to their disabilities.

        The plaintiffs bring claims for violations of the
Americans with Disabilities Act, Rehabilitation Act, New York

State Human Rights Law, and New York City Human Rights Law against the City of New York and "Volunteer Defendants" — the community organizations (and their leaders) who help administer the program on streets near the plaintiffs.[1]

Both the City and Volunteer Defendants now move to dismiss all claims. For the reasons set forth below, the motion to dismiss the claims against the City is denied, and the motion to dismiss the claims against the Volunteer Defendants is granted with respect to the federal claims. The Court requests supplemental briefing on the state- and city-law claims brought against the Volunteer Defendants.

## I.    Background

### A.    The Open Streets Program

The following recitation is drawn from the ordinance instituting the Open Streets program, the rules adopted by the New York City Department of Transportation ("DOT") in furtherance thereof, and the plaintiffs' amended complaint. At

---

[1] The Volunteer Defendants are the North Brooklyn Parks Alliance; North Brooklyn Open Streets Community Coalition; North Brooklyn Mutual Aid; 34th Avenue Open Streets Coalition; Noel Hidalgo, who is the founder and leader of the North Brooklyn Open Streets Community Coalition; Kevin LaCherra, who is also a leader at the North Brooklyn Open Streets Community Coalition; Jeffrey Hodson, who is a volunteer with the North Brooklyn Open Streets Community Coalition; Jim Burke, who is a leader at the 34th Avenue Open Streets Coalition; and Nuala O'Doherty-Naranjo, who is also a leader at the 34th Avenue Open Streets Coalition. Am. Compl. ¶¶ 35-42. The Clerk of Court is respectfully directed to terminate former defendants Horticulture Society of New York, Fort Greene Open Street Coalition, Loisaida Open Street Community Coalition, W103 Open Street Community Coalition, and Clara Smith from the docket.

this stage, we assume the truth of all factual assertions in the complaint.

During the COVID-19 pandemic, the City of New York began temporarily closing streets to "provide spaces for the public to gather safely outdoors."  Am. Compl. ¶ 87.  This culminated in the Open Streets program, codified by the New York City Council in 2021.  *Id.* ¶ 88.

The City Council mandated that a minimum number of "open streets" be in operation at any given time.  N.Y.C. Admin. Code § 19-107.1(c) (requiring "no fewer than 20 open streets in areas underserved by open streets").  An open street is one "designated by the department as such, on which motor vehicle access is controlled by barriers and signage or other traffic calming measures, and on which priority is given to pedestrians, individuals using bicycles, and other non-vehicular street users."  *Id.* § 19-107.1(a).[2]  The City's Department of Transportation "designate[s] and manage[s] open streets" in accordance with the terms of Section 19-107.1 and with "rules of the department*."*  *Id.* § 19-107.1(b).[3]

---

[2] The City adopted the "Open Streets" section of its administrative code in 2021.  *See* N.Y.C. Admin. Code § 19-107.1; N.Y.C.L.L. 2021/055.

[3] An "open street" may comprise a portion of a street that is less than its entire length, N.Y.C. Admin. Code § 19-107.1(a), but the program sometimes requires a minimum length.  *Id.* § 19-107.1(c)(1) ("At minimum, 10 of such open streets shall be no fewer than five blocks in length.").

The City decides what streets are included in (and removed from) the program.  *Id.*  But "volunteers, activists and community organizers" — like the Volunteer Defendants — may "seek to designate streets for the Program" by submitting applications.  Am. Compl. ¶ 90.  Community organizations may also assist in managing open streets after working with DOT to develop an operational plan.  *Id.* ¶ 139.  These organizations apply for necessary permits, notify community stakeholders, and report incidents and issues to DOT.  *Id.*

There are two types of open streets: "full closure" streets and "limited local access" open streets.  34 R.C.N.Y. § 4-21(a).  At issue in this case are the latter.  On limited local access open streets, local vehicular traffic is permitted, but access to other vehicles is limited by the use of metal stanchions or other barriers.  *Id.* § 4-21(a)(i).  These barriers pose difficulties to the plaintiffs when they attempt to access these streets by motor vehicle: whereas able-bodied people can exit their cars and move the barriers themselves, the barriers cause "considerable problems for the elderly and the disabled, who are not physically capable of moving [them]."  Am. Compl. ¶¶ 43, 103-105.

Because of their disabilities, the plaintiffs rely "upon automobiles in order to go grocery shopping, [to] go to medical appointments, to attend social activities, and to

4

generally live their lives independently," which they cannot do when their streets are blocked off. *Id.* ¶ 107. Similarly, rideshare services and paratransit vehicles often either decline trips to these streets or cannot come to the curb because they are either "prohibited by their employers[] from exiting vehicles to move barricades" or their GPS services "identify the closed street areas as closed to vehicle traffic." *Id.* ¶ 108. As a result, plaintiffs must "walk distances that are beyond their ability." *Id.*

## B. Plaintiffs' Claims

The plaintiffs bring claims for violations of Title II of the ADA; Rehabilitation Act; 42 U.S.C. § 1983, Rev. Stat. § 1979 (derivative of their ADA and Rehabilitation Act claims); New York State Human Rights Law ("NYSHRL"); and New York City Human Rights Law ("NYCHRL"). They request "injunctive and declaratory relief enjoining the Open Streets Program." *Id.* at 55.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[4] A claim is plausible "when

---

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor.  *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).  At the same time, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.

### III. Discussion

### A.   Claims Against the City

#### 1.   Title II of the ADA

Congress enacted the Americans with Disabilities Act in 1990.  The statute sought to remedy the "architectural, transportation, and communication barriers" that "individuals with disabilities continually encounter."  42 U.S.C. § 12101(a)(5).  To that end, Title II of the Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  *Id.* § 12132.

6

The Department of Justice has promulgated extensive rules under Title II.  The parties dispute which of these regulations apply and how.  For the reasons discussed below, however, we need not reach that question because the plaintiffs have plausibly pleaded a violation of the statute — Section 12132 — itself.  *See Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014) (observing, in the Section 12132 context, that "a public entity may violate the ADA even if no regulation expressly proscribes its particular conduct").[5]

The plaintiffs contend that they have been denied a benefit of the Open Streets program — namely, the benefit of accessing streets that promise limited local access.

2.    The Plaintiffs' Claims Are Justiciable

The City argues that parts of the plaintiffs' claims are not justiciable, for three reasons: (1) the plaintiffs lack standing to challenge crosswalks and curb cuts under the ADA; (2) certain plaintiffs' claims are moot because they live near streets that are no longer part of the Open Streets Program; and (3) new accommodations rules adopted by DOT moot the case.  For

---

[5] The Second Circuit has stated that the "general prohibitions in the ADA . . . are not self-reading." *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 69 (2d Cir. 2012).  We do not understand self-reading to be synonymous with self-executing, and thus do not believe that guidance is inconsistent with the notion that one can be liable for violating the text of Title II itself without reference to any regulation promulgated pursuant thereto.  *See, e.g.*, *Cohen*, 754 F.3d at 695.

the reasons outlined below, none of these arguments are persuasive.

> a.   The Plaintiffs Have Standing to Bring a
>      Title II ADA Claim

The City first argues that the plaintiffs lack standing to assert claims "regarding blocked access to curbs" because "no Plaintiff has alleged that he or she was negatively impacted by any alleged barrier to curb or crosswalk access." *See* Mem. of Law in Supp. of City Def.'s Mot. to Dismiss ("City Mem.") 23, ECF No. 73.

Article III standing is assessed on a claim-by-claim, not a fact-by-fact, basis. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[P]laintiffs must demonstrate standing for each *claim* that they press . . . ." (emphasis added)). Here, the plaintiffs bring a single claim under Title II of the ADA.

The plaintiffs' allegation that the Open Streets *barriers* make it more difficult to access or leave their homes suffices to establish injury-in-fact. *See, e.g., Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 940 (2d Cir. 2024) ("[D]eterrence [from using a facility] constitutes an injury under the ADA . . . ."). On that basis, the Court has jurisdiction to entertain the Title II claim.

Given that, the City's standing argument reads more like a motion to strike immaterial allegations pursuant to

8

Federal Rule of Civil Procedure 12(f), rather than a motion to dismiss one or more counts for lack of jurisdiction.  The allegations of curb-cut-related injury may or may not be immaterial.  But Rule 12(f) motions are highly disfavored, *see Brown v. Maxwell*, 929 F.3d 41, 51 n.42 (2d Cir. 2019), and "will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation."  *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 225 (E.D.N.Y. 2015).  This issue can be more effectively addressed at summary judgment or in motions *in limine*.

> b.    The Claims of Plaintiffs Mill Jonakait and
>        Rosyln Huebener Are Not Moot

The City also argues that the claims of plaintiffs Mill Jonakait and Roslyn Huebener are moot because South Portland Avenue, one of the streets that affects them,[6] is no longer part of the Open Streets Program.  City Mem. 24.  A case will generally be moot absent a continued "concrete interest" in the litigation.  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).  At the same time, "a defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur."  *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024).  "To show that a case is truly moot, a defendant

---

[6] Both plaintiffs also assert proximity to or frequent use of other streets that are part of the program.

must prove no reasonable expectation remains that it will return to its old ways. That much holds for governmental defendants no less than for private ones." *Id.* A defendant's "sparse declaration" regarding its cessation is not enough. *Id.* at 242.

The City falls short of satisfying that "formidable burden" at this stage. *Id.* at 241. The City represents — in their brief, not even by affidavit — that South Portland Avenue is no longer part of the Open Streets Program and that they have not received any applications for South Portland Avenue to be part of the program in 2024. City Mem. 24-25. This statement, however, tells us nothing about the likelihood that South Portland may be part of the program in the future. The City's representations are thus insufficient at this stage. *Fikre*, 601 U.S. at 241.

> c.   The City's New Accommodations Rules Do Not
>      Moot the Case

The City notes that after the plaintiffs filed the amended complaint, DOT promulgated accommodations rules that allow the barriers at issue to be moved, and that "DOT may in fact provide services to assist individuals with disabilities to temporarily move the barriers to facilitate local vehicle access." City Mem. 6-7 (referring to the rules promulgated at 34 R.C.N.Y. § 4-21). The fact that these new rules *may* cure the plaintiffs' injuries does not moot their claims at this stage,

given the "heavy burden" required to show mootness and the "intensely factual" nature of the inquiry. *Am. Freedom Def. Initiative v. Metro. Trans. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016); *Samele v. Zucker*, 324 F. Supp. 3d 313, 328 (E.D.N.Y. 2018). If there are facts outside the complaint to suggest that the program has become more accessible, the Court will not consider them at this stage. *See Uni-World Cap. L.P. v. Preferred Fragrance, Inc.*, No. 13-CV-7204, 2014 WL 3900565, at *11 (S.D.N.Y. Aug. 8, 2014) ("[T]he Court, in resolving a motion to dismiss, cannot consider a fact adduced in discovery, let alone a factual claim by a defendant of adequate remediation."). The mootness argument thus falls short.

3. The *Prima Facie* Case Under Title II and the Rehabilitation Act

The Second Circuit analyzes Title II and Rehabilitation Act claims together, since the "standards for actions under these provisions . . . are generally equivalent." *Dean v. Univ. at Buffalo Sch. of Med. & Biomed. Scis.*, 804 F.3d 178, 187 (2d Cir. 2015).

"In order to establish a violation under the ADA, the plaintiffs must demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants'

11

services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). The Rehabilitation Act claim contains the same elements, except that to be subject to that Act, "a plaintiff must [also] show that the defendants receive federal funding." *Id.*

In the instant case, the parties do not dispute that the plaintiffs are qualified individuals with disabilities, or that the City is subject to the ADA and the Rehabilitation Act.[7] The defendants' motion thus turns on the third prong, implicating discrimination and the denial of benefits "by reason of" disability.

To address this question, the Court must first define the scope of the "program, service, or activity" at issue, and then evaluate whether the defendants denied plaintiffs "meaningful access" to that program's "benefits." *Alexander v. Choate*, 469 U.S. 287, 301 (1985); *Henrietta D.*, 331 F.3d at 282.

---

[7] Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). Perhaps counterintuitively, the statute goes on to define "program or activity" as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or local government." *Id.* § 794(b). Plaintiffs plead that DOT receives federal funds and therefore is subject to the Rehabilitation Act, and that DOT specifically received federal funds for the Open Streets Program. *See* Am. Compl. ¶¶ 101, 138. However, since DOT is not subject to suit, the City is the appropriate defendant. *See* N.Y.C. Charter ch. 17 § 396.

12

a.   The Program at Issue Is the Open Streets
     Program

The parties disagree as to the "program, service, or activity" at issue.  The plaintiffs claim that the "programs, services, or activities" are the individual streets affected by the Open Streets program.  Pls.' Mem. of Law in Opp. to Def. City of New York's Mot. to Dismiss 9-12, ECF No. 76.  The City contends that it is the entire network of New York City streets. City Mem. 7-10.[8]

In the end, the correct conclusion is the obvious one: the "program" at issue is the Open Streets program.  That conclusion emanates from the plain language of the statute, together with a brief perusal of dictionary definitions and case law.  The Second Circuit has approved this approach in the past, upholding a district court's reading of "activity" taken from Webster's Third.  *See Innovative Health Sys.,* 117 F.3d at 44-45 (quoting the definition of Activity in *Webster's Third New International Dictionary* (1993): a "natural or normal function or operation").

---

[8] The Second Circuit has instructed that we define the scope of the "program, service, or activity" broadly to align with the ADA's purpose as a remedial statute.  *E.g., Innovative Health Sys., Inc. v. City of New York*, 117 F.3d 37, 45 (2d Cir. 1997); *Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 247 (2d Cir. 2025).  However, guidance must be balanced against the Supreme Court's admonition that reading a statute as pursuing "its remedial purpose at all costs" rests on a "flawed premise."  *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2017).  Regardless, this issue is resolved on the text of the statute itself.

The same dictionary defines "program" as a "plan or procedure; a schedule or system under which action may be taken toward a desired goal; a proposed project or scheme," *see* Program, *Webster's Third New International Dictionary Unabridged* (2002), and this definition maps quite neatly onto the Open Streets program and the streets it comprises at any given time. *See, e.g.*, *Holmes v. Godinez*, 311 F.R.D. 177, 227 (N.D. Ill. 2015) (Illinois Department of Corrections' "job assignment program" was a "program" under Title II); *Wright v. Bd. of Comm'rs*, No. 20-CV-644, 2022 WL 17574078, at *10 (M.D. La. Dec. 9, 2022) (same for Baton Rouge's "bus stop program").

At bottom, the plain language of the statute — and common sense — dictate that the "program" at issue is the Open Streets program.

> b.   Plaintiffs Plausibly Plead a Denial of the Open Streets Program's Benefits

Having defined the program at issue, we turn to the question of whether plaintiffs have plausibly pleaded the deprivation of its benefits.  We conclude that they have. Again, this question is relatively easily answered by applying the plain language of the statute to the complaint's allegations.

To be sure, the *primary* benefit of the Open Streets program is the ability to enjoy streets on foot.  R.C.N.Y. § 4-

21(a) (defining an "open street" as one in which "traffic calming measures" are employed and where "priority is given to pedestrians, individuals using bicycles, and other non-vehicular street users"). The plaintiffs in this case do not complain that they have been deprived of this benefit.

But the primary benefit is not the only one. Another salient feature of the program is that people who live on limited local access open streets can continue to access these streets, including by car, to get to their homes. *See* 34 R.C.N.Y. § 4-21(a)(i) (explicitly excepting "vehicles parking on the open street" from the program's "traffic calming measures"); Am. Compl. ¶ 103 ("The signage on the barricades indicates that while the streets are closed to automobiles generally, local vehicles are permitted to access the streets in order to, for example, park their automobiles by moving the barricades.").

This feature, too, is properly characterized as a "benefit" within the meaning of Section 12132. Courts have recognized that a program may offer benefits beyond its primary purpose. *E.g.*, *United States v. Georgia*, 546 U.S. 151, 157 (2006) (observing, in dicta, that it was "quite plausible" that prison officials' refusal to accommodate "disability-related needs in such fundamentals as mobility, hygiene, medical care,

and virtually all other prison programs" was a denial of the benefits of a prison's services, programs, or activities).

And the plaintiffs have plausibly alleged the *denial* of this benefit.  Am. Compl. ¶¶ 104-105.  They allege the City often uses "metal police stanchions which are not absolutely immobile, but that are still physically difficult or impossible to move for the disabled, particularly disabled seniors, who are often too frail to lift or move the stanchions or who are at significant risk of injuring themselves in an attempt to move these obstacles."  *Id.* ¶ 105.  And in poor weather conditions, "[m]oving stanchions and being required to get in and out of their vehicle multiple times under these slippery and hazardous conditions is even more difficult and dangerous for disabled residents of the community seeking to move their vehicles through the barricaded areas."  *Id.* ¶ 106.

Since the plaintiffs have plausibly pleaded a denial of the program's benefits, the motion to dismiss the Title II ADA and Rehabilitation Act claims against the City is denied.

4.    Supplemental Jurisdiction

The City's only basis for moving to dismiss plaintiffs' state- and city-law claims is that the Court should decline to exercise supplemental jurisdiction in the event we dismiss the federal claims.  City Mem. 25.  At this stage, the Court will retain supplemental jurisdiction over the state- and

16

city-law claims against the City, because the federal claims survive and the supplemental claims derive from a common nucleus of operative fact. *Briarpatch, Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004). For that reason, the City's motion to dismiss the NYSHRL and NYCHRL claims is denied.

## B.    Claims Against the Volunteer Defendants

In addition to their claims against the City, the plaintiffs also bring Title II ADA, Rehabilitation Act, Section 1983, New York State Human Rights Law, and New York City Human Rights Law claims against the Volunteer Defendants. The Volunteer Defendants include various community organizations and the leaders of those organizations who are unpaid volunteers and help administer certain Open Streets. Am. Compl. ¶¶ 34-42.

### 1.    Title II of the ADA Does Not Reach the Volunteer Defendants

"Title II of the ADA applies only to public entities." *Green v. City of New York*, 465 F.3d 65, 74 (2d Cir. 2006). Plaintiffs claim that the Volunteer Defendants are deploying the state's "police power" by helping manage certain streets in the Open Streets Program, and that they can therefore be held responsible under Title II. We disagree.

The individual defendants are most easily dispensed with here. An individual cannot be a public entity. *Id.* at 76 (citing 42 U.S.C. § 12131(1)). Accordingly, the ADA claims must

17

be dismissed against Noel Hidalgo, Kevin Lacherra, Jeffrey Hodson, Jim Burke, and Nuala O'Doherty-Naranjo.

Public entities do include any "instrumentality of" a "local government," 42 U.S.C. § 12131, and the plaintiffs assert that the entities among the Volunteer Defendants qualify as such. Am. Compl. ¶ 144. The statute does not define "instrumentality," but the Second Circuit has expounded on its meaning in this precise context.

In *Green*, *supra*, the Court of Appeals held that to be an instrumentality of a local government for purposes of Title II, it is not enough that the entity in question assist the government in achieving its desired ends. *Green*, 465 F.3d at 79. Instead, the entity must "somehow belong to the government or have been created by it." *Id.* Based on that reading, the Second Circuit held that a "private hospital performing services pursuant to a contract with a municipality" was not an instrumentality thereof, even if it did so "according to the municipality's rules and under its direction." *Id.*

Given that reading, the organizational Volunteer Defendants must be dismissed. As in *Green*, the organizations here are administering the City's program, subject to the City's rules and direction. The complaint nowhere alleges that the City created the entity Volunteer Defendants. The actions it does allege are insufficient: that the entities submit

18

applications to the City (though only after working with DOT to develop an operational plan), and that they sometimes enter into a contractual agreement.  Even on streets managed by community organizations, DOT provides all necessary equipment.  N.Y.C. Admin. Code § 19-107.1(c)(2).  Further, organizations continue to "report[] observations, issues and/or incidents to NYC DOT." Am. Compl. ¶ 139.  *Green* therefore controls.

    2.    The Volunteer Defendants Are Not Subject to the <u>Rehabilitation Act</u>

The Rehabilitation Act only applies to entities that receive federal financial assistance for a particular program or activity.  29 U.S.C. § 794(a).  Plaintiffs claim that the City receives federal funds for the Open Streets Program and that, separately, the Volunteer Defendants receive federal funds from DOT "indirectly."  Am. Compl. ¶¶ 34-42, 101.  But even so, "Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds."  *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605-06 (1986).  That is, to be liable under the Rehabilitation Act, the Volunteer Defendants would have to receive federal subsidies for the administration of the Open Streets Program.  *Id.*

19

Plaintiffs allege no facts to support the conclusion that the Volunteer Defendants receive federal funds.  This requires dismissal of the Rehabilitation Act claim.  *See id.* at 607 (airlines not subject to Rehabilitation Act when they "only benefit" from airports' use of federal aid).  Even if the allegations were sufficient to conclude that the Volunteer Defendants were "Congress's intended recipients," the plaintiffs do not indicate the period in which any of the Volunteer Defendants received federal financial assistance, nor do they state what the federal funds were received for.  *See, e.g., id.; Hunt v. Univ. of Pittsburgh Med. Ctr.*, No. 18-CV-1757, 2019 WL 3776545, at *5 (M.D. Pa. Aug. 12, 2019) (dismissing Rehabilitation Act claim where plaintiff failed to allege the *type* of federal financial assistance received); *Taibi v. Borough of Slatington*, No. 18-CV-385, 2018 WL 6173366, at *5 (E.D. Pa. Nov. 26, 2018) (dismissing Rehabilitation Act claim where plaintiff failed to plead that the discrimination occurred "within the period that [the] entity received federal financial assistance").  Therefore, the Rehabilitation Act claim against the Volunteer Defendants must be dismissed.

3.    The Section 1983 Claim Is Insufficiently Alleged Against the Volunteer Defendants

The plaintiffs also bring a Section 1983 claim against the Volunteer Defendants that is predicated on the same

20

allegations as their ADA and Rehabilitation Act claims.[9]  For the same reasons the underlying antidiscrimination claims are dismissed, the Section 1983 claim is dismissed.  *Stofsky v. Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 305 (S.D.N.Y. 2009); *Laface v. E. Suffolk BOCES*, No. 18-CV-1314, 2019 WL 1959489, at *4-5 (E.D.N.Y. May 2, 2019).

### 4.   NYSHRL and NYCHRL Claims

The plaintiffs also assert NYSHRL and NYCHRL claims against the Volunteer Defendants.  The Court continues to maintain supplemental jurisdiction over these claims notwithstanding the dismissal of all federal claims against the Volunteer Defendants.  The federal statute governing supplemental jurisdiction requires that *all* claims over which a federal district court has original jurisdiction be dismissed before the court relies on that provision to dismiss supplemental claims.  28 U.S.C. § 1367(c)(3).  "This refers to all claims in the case, not just those claims asserted against a particular defendant."  15A *Moore's Federal Practice* — Civil § 106.66(1) (3d ed. 2026); *see also Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 657 (2d Cir. 1996) ("Once the

---

[9] The operative complaint is not entirely clear as to which defendants the Section 1983 claim is asserted against.  We construe it as asserted only against the Volunteer Defendants because (a) those are the only defendants discussed in the plaintiffs' Section 1983 briefing, and (b) this limitation makes sense: the ADA and Rehabilitation Act reach only entities, not individuals, so the invocation of Section 1983 is necessary.

district court exercised original jurisdiction over [plaintiff's] claim against [one defendant] under . . . 28 U.S.C. § 1331, it also had supplemental jurisdiction over [plaintiff's] claim against [another defendant] because the two claims are clearly so related as to be part of the same controversy."); *Johnson v. City of New York*, 669 F. Supp. 2d 444, 453 (S.D.N.Y. 2009) (same).  Here, the state- and local-law claims against the Volunteer Defendants bear a common nucleus of operative fact with the federal claims against the City.  Accordingly, we reach the merits of those defendants' motions to dismiss the NYSHRL and NYCHRL claims.

Like the ADA, the NYSHRL and NYCHRL protect against disability discrimination in places of public accommodation. NYSHRL applies to any "owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation."  N.Y. Exec. Law § 296(2)(a).  NYCHRL applies to "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold, or otherwise made available."  N.Y.C. Admin. Code § 8-102.

Here, the plaintiffs argue that the Volunteer Defendants functioned as "the owner (and the agents of the

22

owner)" and "provider (and the agents of the provider) of public accommodations." Am. Compl. ¶¶ 157, 159. The plaintiffs argue that the "place of public accommodation" at issue is the Open Streets Program. Pls.' Mem. of L. in Opp'n to Volunteer Defs.' Mot. to Dismiss 8-9, ECF No. 80. The Volunteer Defendants make two arguments in favor of dismissal: (1) that the state- and city-law claims should fail for the same reasons as the federal claims against them (namely, that they are neither public entities nor recipients of federal funds); and (2) that the individual volunteer defendants were not "personally involved" in discriminatory conduct and therefore cannot be liable under the NYSHRL or NYCHRL. Volunteer Defs.' Mot. to Dismiss 14-19, ECF No. 79. Given the relative paucity of briefing on the state- and local-law issues, the Court will reserve judgment on these claims pending further submissions (as described below).

The Volunteer Defendants do not address whether the complaint identifies a place of public accommodation, nor whether they are adequately alleged to be "agents" or "providers" thereof. The Court therefore requests supplemental briefing on the following issues: (1) whether the Volunteer Defendants are "agents" of the City, (2) whether the Volunteer Defendants are "providers" of any place of public accommodation,

23

and (3) whether the complaint adequately alleges a "place of public accommodation."[10]

## IV.  Conclusion

For the foregoing reasons, the City's motion to dismiss is denied, but the Volunteer Defendants' motion to dismiss is granted with respect to the federal claims only.  The Court reserves judgment on the state- and city-law claims brought against the Volunteer Defendants, subject to their supplemental letters.  The Volunteer Defendants' letter, not to exceed five pages, is due by March 31, 2026; the Plaintiffs' response, also not to exceed five pages, is due by April 14, 2026.

The Clerk of Court is respectfully directed to terminate former defendants Horticulture Society of New York, Fort Greene Open Street Coalition, Loisaida Open Street

---

[10] The remaining Volunteer Defendants may, if they choose, furnish copies of the agreements they entered into with the City.

24

Community Coalition, W103 Open Street Community Coalition, and Clara Smith from the docket.

SO ORDERED.

                              /s/ Eric Komitee
                              ERIC KOMITEE
                              United States District Judge


Dated:    March 10, 2026
          Brooklyn, New York